[No. C005090. Third Dist. Oct. 29, 1990.]

In re the Marriage of DEA and STAVROS P. ECONOMOU.
DEA ECONOMOU, Respondent, v.
STAVROS P. ECONOMOU, Appellant.

1468

**COUNSEL**

Steering & Seidenberg and Jerry L. Steering for Appellant.

W. Urie Walsh for Respondent.

**OPINION**

**DeCRISTOFORO, J.—**

OPINION ON REHEARING

 Husband, Stavros P. Economou, and wife, Dea Economou, divorced after a 13-year marriage which produced 2 sons. The dissolution of the couple's marriage involved a truly staggering amount of community property, and the care and custody of the two minor children. Wife made numerous discovery requests in an effort to determine the amount of community assets held by husband in California, Georgia and husband's native Greece. Husband failed to provide any information, despite several court orders directing him to comply with wife's requests. Because of husband's continual failure to provide any information, the trial court entered husband's default on every issue in the case except dissolution, child custody, and child visitation. In addition, because of evidence that husband had absconded to Greece with millions in community property, the court appointed a receiver to marshal community assets. Following a four-day court trial, the trial court issued judgment on bifurcated issues (regarding community property located in Georgia). The court also issued a final judgment and order on child custody, visitation and support, spousal support, and the distribution of community property. Husband appeals from the final judgment and the

judgment on bifurcated issues. Husband offers a barrage of arguments, including: the trial court erred in imposing "issue sanctions" on husband; the trial court erred in making child support and spousal support retroactive to the date of wife's first filing for support; the judgment on bifurcated issues was improper; the judgment distributing community assets is unsupported by the evidence; the court erred in appointing the receiver; and the visitation granted husband is "grossly restrictive." We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

After 13 years of marriage, wife filed for dissolution of the marriage. Wife then filed a motion for temporary child and spousal support and fees. Wife claimed monthly expenses of $18,329.29 and no income.

After several continuances, husband and wife entered into a stipulation regarding child custody and a stipulation regarding distribution of the income in the couple's bank accounts. The stipulations also addressed the financial arrangements between the parties during the dissolution process. Subsequently, husband refused to reduce these stipulations to writing. Wife filed a motion under Code of Civil Procedure section 664.6[1] requesting the court to enter orders pursuant to the oral stipulations. The court entered the requested orders.

Under the stipulations, as a temporary measure, husband and wife would each receive a $1.5 million cash advance, and the couple would split the passive income of the community. Wife would receive $2,250 per month child support for the two boys. Under the terms of the stipulations, husband agreed to "cooperate and participate together [with wife] in obtaining all records and information" and to exchange tax information.

After husband failed to disclose financial information to wife, wife filed a motion to compel discovery. Following a hearing, the court entered an order directing husband to provide wife with financial information and ordering him to return to the United States $1.8 million in community property which husband had reduced to cash and transferred to Europe. The court also ordered a receiver be appointed, but stayed the appointment for one month, on the condition husband complied with the court's order.

One month later, after husband failed to comply with any of the court's orders, wife nominated Maxwell Freeman to be the court's receiver. The

---

[1] Section 664.6 states: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

court appointed Freeman as its receiver and directed Freeman to take charge and gather all of the community property during the dissolution proceedings.

Approximately two months after entering its original order compelling discovery, the court found husband continued to refuse to produce financial documents. The court gave husband 10 days to comply.

Meanwhile, the receiver brought an ancillary action in Georgia after discovering the existence of two corporations started by husband during the marriage: Ecos Development and J & S Inc. The receiver brought suit to comply with the court's mandate to "marshall any asset where ever situated." Wife attempted to depose husband's Georgia accountant, but husband refused to allow the accountant to answer questions.

Shortly after these unsuccessful attempts at discovery, wife filed a motion for sanctions and modification of the court's order pendente lite as to temporary child custody and visitation.[2] Again, the court gave husband 10 days to comply with the earlier order before entering an order on wife's motion. When husband still failed to comply, the court issued an order entering husband's default on all issues in the proceedings except dissolution, child custody, and visitation. The order precluded husband from offering any evidence, making any objections, or cross-examining any of wife's witnesses at trial on any issue except dissolution, custody, and visitation. The parties refer to this order as the "issue sanctions."

Wife filed a motion for an order requiring the receiver to sell the couple's community stock interest in her father, Alex Spanos', corporations and to hold the money from the sale. Husband filed an opposition to the sale, and also requested removal of Freeman as court-appointed receiver. Husband claimed Freeman had been his wife's father's attorney and was an interested party in the action. The court denied wife's motion to sell the stock, and denied husband's motion to remove Freeman as receiver.

Subsequently, wife filed another motion for modification of child support and spousal support pendente lite. The court issued an order awarding wife $10,000 per month spousal support, increasing child support to $3,100 per month per child, and awarding $350,000 in attorney's fees and costs.

---

[2] In response to wife's motion for sanctions, husband attempted to justify his failure to respond to the court ordered discovery of his financial assets. Husband claimed he believed wife's father, Alex Spanos, would use this financial information to harm his financial interests both in the United States and in Europe.

A four-day court trial was held.[3] During the trial, in the face of husband's continual refusal to provide information on community assets, wife attempted to reconstruct the couple's community assets in Georgia, California and Greece. Wife offered the lengthy, complex testimony of a private investigator, accountants, attorneys, and former associates of her husband. Wife contended husband had misappropriated $6 million in stolen community funds, and had fled to Europe.

Following the trial, the court issued a judgment on bifurcated issues, subsequently amended, finding the parties held known Georgia properties as tenants-in-common.[4] The court also issued an order dissolving the marriage.

Finally, the court issued a lengthy statement of decision regarding custody and visitation, a statement of decision on other issues and a judgment. Briefly, the court found husband misappropriated community property, which he reduced to cash in the amount of $6,086,734, and held quasi community property in Greece in the amount of $1,029,408. The court also determined the community's interest in various assets, properties and corporations, and divided the community property. The court declined to award sanctions against the husband but awarded additional attorney's fees of $250,000. We shall examine the court's decision in detail as we consider each of husband's exhaustive contentions.

Husband filed a notice of appeal and an amended notice of appeal. Freeman's receivership was concluded after a noticed hearing.

## I. *Propriety of Issue Sanctions*

Husband in six separate "arguments" repeatedly airs the same complaint: the trial court improperly imposed issue sanctions against him. The six rambling "arguments" consist of the following:

(1) "California Law Prohibits the Punishment of One Party to a Dissolution Proceeding by Awarding Child Custody or Greater Visitation to the Other."

(2) "The Financial Status of the Parties is an Important Factor in the Determination of Child Custody and Visitation."

---

[3] Husband did not attend the trial, having relocated to Greece where he apparently remains.

[4] The Georgia court denied full faith and credit to the California receivership, and refused to appoint Freeman (or anyone else) as receiver.

(3) "California Law Should Equally Prevent the Imposition of Issue Sanctions to the Extent Same Compromises a True Determination of the Best Interests of the Child."

(4) "The Trial Court-Imposed an Issue Sanction Upon STAVROS Barring Him from Introducing any Evidence, Cross-Examining any Witnesses or Making any Objections at Trial on the Issue of Financial Matters of the Parties."

(5) "The Issue Sanctions Imposed by the Court Prevented STAVROS from Participating on the Issue of Child Custody and Visitation Because the Trial Court's Decision to Award DEA Full Legal and Physical Child Custody and to Severely Restrict STAVROS' Child Visitation was Based on Issues Involving Financial Matters."

(6) "Because the Trial Court Prevented STAVROS From Participating at Trial on the Issues Involving Financial Matters to the Extent that they Effected [*sic*] The Court's Decision or Judgment on Child Custody and Child Visitation, The Trial Court Committed Reversible Error."

All this sound and fury boils down to one contention: husband disagrees with the propriety of the court-imposed issue sanctions.

In the present case the court imposed sanctions pursuant to Code of Civil Procedure section 2023, subdivision (b)(2), which states: "The court may impose an issue sanction ordering that designated facts shall be taken as established in the action in accordance with the claim of the party adversely affected by the misuse of the discovery process. The court may also impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses."

■ A court may impose sanctions pursuant to Code of Civil Procedure section 2023, subdivision (b)(2) on a party who violates an order compelling discovery. However, the court's discretion must be exercised in a manner consistent with the basic purposes of such sanctions: to compel disclosure of discoverable information. Discovery sanctions cannot be imposed to punish the offending party or to bestow an unwarranted "windfall" on the adversary. (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499]; *Motown Record Corp.* v. *Superior Court* (1984) 155 Cal.App.3d 482, 489 [202 Cal.Rptr. 227].)

■ The power of the trial court to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. Only two facts are absolutely prerequisite to imposition of the sanc-

tion: There must be a failure to comply with a valid discovery order, and the failure must be willful (Code Civ. Proc., § 2034, subd. (e)). Where those facts are found by the trial court to be true, such findings are entitled to deference on appeal. The test on appeal is whether the lower court abused its discretion, and each case must be decided on its own facts, with the appellant having the burden of showing an abuse. A trial court's exercise of discretion will be upheld if it is based on a reasoned judgment and complies with the legal principles and policies appropriate to the particular matter at issue. (See *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 114-115 [260 Cal.Rptr. 369].)

█ Husband, in his opening brief, admits he failed to comply with the court's orders regarding discovery, a failure which led to the court's issue sanctions against him. This failure of husband to comply with a valid discovery order satisfies the first prerequisite of issue sanctions.

Was husband's failure willful? Husband argues he was excused from complying with the order to disclose assets because he wanted to prevent this financial information being disclosed to interested third parties (namely wife's father). Husband also attempts to argue the court's issue sanctions were somehow related to the modification of child custody and visitation.

We reject both contentions. Husband failed to provide any admissible evidence to support his fears of "interested third parties" becoming privy to sensitive financial information. Moreover, husband's contention that the issue sanctions barred him from "offering evidence on the financial issues with regard to the [child] visitation and custody issues" lacks merit. The court's statement of decision following the trial reveals the court's decisions regarding visitation and custody were not based on financial concerns, but were motivated by concerns for the children's well-being and safety.

We find, despite husband's multitude of pseudoarguments, that the trial court properly imposed issue sanctions for husband's willful failure to comply with the court's discovery orders.

II. *Retroactivity of Child and Spousal Support*

█ Husband argues the trial court's award of retroactive spousal and child support to wife must be reversed. Husband reasons a final judgment for support cannot be made retroactive to the date of notice of motion of a temporary support order.

Child and spousal support was originally considered in the court's stipulated orders filed on May 15, 1987.

Subsequently, in its findings and order filed June 3, 1988, the trial court found the earlier stipulated orders filed May 15, 1987, were a fraud on both wife and the court. The court made specific findings that husband, in the stipulated order, promised to divide with wife community passive income; maintain the status quo with respect to the parties' community property; and to engage in neutral discovery of the assets of the parties. However, husband made these promises knowing they were false in order to induce wife to enter into the stipulated orders. The court found husband secreted community property in both the United States and abroad; removed and continued to remove community property from the United States in order to defeat wife's community property interest; and disobeyed all orders of the court regarding discovery of his income.

The court further stated, "That by its silence, the Court has not found and/or decided as to whether or not equity and/or basic fairness requires that the Court having vitiated and/or set aside those certain applicable portions of the Stipulated Order, that the spousal and child support orders hereinafter made should be made retroactive to the date of the first filing of Petitioner's [wife's] *Motion for Support*, filed November 19, 1986." The court's statement gave husband notice that the issue of retroactivity might be considered during future proceedings. Husband requested and was granted permission by the court to respond on the issue of retroactivity.

Following the trial, on July 19, 1988, the court again considered whether or not the support order should be made retroactive to wife's filing of her original motion for support. The court again reiterated husband's fraudulent representations concerning the stipulations, and held that child and spousal support would be retroactive. The court ruled that by "setting aside the stipulation, the Court has returned the parties to where they would have been prior to the stipulation of 3-27-87." In effect, husband's fraudulent conduct led the court to set aside the fraudulently induced stipulations, returning the parties to their prestipulation positions.

The trial court acted within its power in setting aside a fraudulently induced stipulation. A stipulation may be set aside " 'where special circumstances exist rendering it unjust to enforce the stipulation.' " (*Roth* v. *Morton's Chefs Services, Inc.* (1985) 173 Cal.App.3d 380, 385 [218 Cal.Rptr. 684], italics omitted; *Baker* v. *Ramirez* (1987) 190 Cal.App.3d 1123, 1135 [235 Cal.Rptr. 857].) In addition, a court, in the interest of fairness, may relieve a party from the effect of a stipulation. (*In re Marriage of Kerry* (1984) 158 Cal.App.3d 456, 465 [204 Cal.Rptr. 660].)

As a general rule, child support orders may be made retroactive to the date of filing the notice of motion for support. (Civ. Code, § 4700, subd.

(a).) Spousal support awards and agreements are modifiable throughout the support period. (Civ. Code, §§ 4801, subd. (a), 4357, 4811, subd. (b).) Civil Code section 4801, subdivision (a) gives the court discretion to make a spousal support modification retroactive to the date of filing the notice of motion for support.

Husband's arguments against retroactive spousal and child support are, at best, garbled and unsupported by authority. Husband's convoluted reading of the family law statutes lacks merit, and his attempts to hint at collusion between the trial court and wife shall not be dignified by further mention.

The trial court put husband on notice that retroactive child and spousal support would be considered, and offered husband an opportunity to present his views on the matter. Following the trial, the court clearly outlined husband's fraudulent conduct, and, as a result, set aside the stipulated orders. The court then awarded wife child and spousal support retroactive to the filing of her original notice of motion for support. We find the trial court did not err in awarding retroactive support.

## III. *Judgment on Bifurcated Issues*

Husband argues the trial court's amended judgment on bifurcated issues is too uncertain to be enforced. Husband also contends the amended judgment on bifurcated issues improperly gave wife a one-half interest in the Georgia property.

██ The trial court issued a separate judgment on bifurcated issues to facilitate the division of the couple's community property located in Georgia. Prior to the trial, the court-appointed receiver Freeman had been unable to seize community property located in Georgia. The Georgia court refused to afford the receivership full faith and credit in the state of Georgia.[5] To protect her interest in the property located in Georgia, and to prevent husband from misappropriating the assets, wife requested the court to bifurcate the issue of the Georgia quasi-community property.[6]

The court granted wife's request and issued a bifurcated judgment, subsequently amended. The court, in issuing the bifurcated judgment, provided wife with a document notifying the Georgia court that husband and wife

---

[5] The Georgia court's order denying the request for appointment of a receiver gave no reason for denying the request.

[6] Quasi-community property is property located outside of California which would be considered community property if located in California. (Civ. Code, § 4803; *Addison* v. *Addison* (1965) 62 Cal.2d 558 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391].)

had an equal interest in property wife managed to locate in Georgia. The trial court stated husband and wife were "tenants-in-common" in the Georgia property.

Husband did not file any objection to wife's motion to bifurcate, or to the entry of the bifurcated judgment.

Husband now contends the judgment is too uncertain. Husband's contention is belied by the record. The trial court, faced with husband's continual refusal to provide information on Georgia assets, adequately described the property and assets wife had managed to locate. Husband's obfuscations and evasions hampered both the court's and wife's efforts to locate quasi-community assets in Georgia. Despite husband's tactics, the court in its amended judgment on bifurcated issues describes the assets covered by the judgment with reasonable certainty and clarity.[7]

■ Husband also argues the court erred in awarding wife a half-interest in the Georgia property. Pursuant to Civil Code section 4800.5, subdivision (b)(1), the trial court attempted to fashion an order which wife could present to the Georgia courts in an effort to obtain full faith and credit in Georgia.[8]

"It is settled in California that a court having jurisdiction of the parties [in a dissolution action] may adjudicate their rights to land located in another state and that the adjudication is res judicata and is to be accorded

---

[7] For example, the court provided the following descriptions of real property located in Georgia: "1) 4.7 acres, Medlock Bridge Road, Gwinett County, as described in a warranty deed from Peter A. Hensen, Jr. to ECOS Development, Inc. and John P. Economou, in the real property records of Gwinett County, Georgia, at Book 2743, page 161; [¶] 2) 5564 Roberts Drive, Dunwoody, Georgia, as described in a warranty deed from ECOS Development, Inc. to Stavros P. Economou, in the real property records of DeKalb County, Georgia, at Book 5695, page 279; [¶] 3) Furnishings and furniture at 5564 Roberts Drive, Dunwoody, Georgia; [¶] 4) 23.213 acres, Chamblee, Tucker Road, Fulton County, Georgia; [¶] 5) 9.205 acres, Mercer, University Avenue, DeKalb County, Georgia; [¶] 6) Lot 238, 15th District, DeKalb County, Georgia; [¶] 7) 7.751 acres, Cobb County, Georgia; . . . ."

[8] Civil Code section 4800.5 states: "(a) Except as provided for in subdivision (b), if the property subject to division under Section 4800 includes real property situated in another state, the court shall, if possible, divide the community property and quasi-community property in accordance with Section 4800 in such a manner that it is not necessary to change the nature of the interests held in the real property situated in the other state. [¶] (b) If it is not possible to divide the property in the manner provided for in subdivision (a), the court may do any of the following in order to effect a division of the property in accordance with Section 4800: [¶] (1) Require the parties to execute such conveyances or take such other actions with respect to the real property situated in the other state as are necessary. [¶] (2) Award to the party who would have been benefited by such conveyances or other actions the money value of the interest in such property that he would have received if such conveyances had been executed or other actions taken."

full faith and credit in the situs state regardless of whether the decree orders execution of a conveyance. Although such a decree cannot in itself change or determine title, and while a subsequent action for that purpose must be brought in the situs state, an adjudication, for example, that one of the parties is entitled to the property is binding in the subsequent action." (*Barber* v. *Barber* (1958) 51 Cal.2d 244, 247 [331 P.2d 628], citing *Rozan* v. *Rozan* (1957) 49 Cal.2d 322, 330 [317 P.2d 11]; see also *In re Marriage of Hanley* (1988) 199 Cal.App.3d 1109, 1119-1120 [245 Cal.Rptr. 441].)

In *Rozan* v. *Rozan, supra*, 49 Cal.2d 322, the Supreme Court considered a situation similar to the case before us. In *Rozan* the wife in a dissolution action was awarded a community interest by a California court in North Dakota real property. The Supreme Court held the judgment was "entitled to full faith and credit in North Dakota to the extent that it determines the rights and equities of the parties with respect to the land in question. An action on that judgment in North Dakota, however, is necessary to effect any change in the title to the land there. Thus, the judgment must be affirmed to the extent that it declares the rights of the parties before the court and modified to the extent that it purports to affect the title to the land." (*Id*. at pp. 331-332.)

In the present case, the trial court, in its amended judgment on bifurcated issues states: "That upon proof, satisfactory to the Court, the Court finds that the parties have substantial property, both real and personal, in the State of Georgia that was acquired during the time of the marriage, and, which consitutes quasi-community property as set forth in California Probate Code Sec. 66 and California Civil Code Sec. 4800, et. seq. [¶] That the Court further specifically finds the parties have a present and equal interest in the following known real and personal property in the State of Georgia, such property constituting quasi-community property, to the extent that Respondent owns or has any interest in said property including, but not limited to, the following assets . . . ." This language comports with the decision in *Rozan*, in that it "determines the rights and equities of the parties with respect to the land in question." (49 Cal.2d at p. 331.)

The court then goes on to hold: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, AS FOLLOWS: [¶] The Petitioner and Respondent *do and shall hold title* in the above set forth [Georgia] property as tenants-in-common, each party holding a present and equal fifty (50%) percent interest therein." (Italics added.) While it can be argued that this language purports to affect title, in violation of the rule enunciated in *Rozan*, and that the court's order must therefore be modified to remove the language purporting to affect title to land held outside California, (49 Cal.2d at p. 332) that result is obviated here because subsequent to the filing

of this appeal, the trial court's language was construed, interpreted, and accepted by the appellate court in the situs state as *not* affecting Georgia title. (*Economou* v. *Economou* (1990) 196 Ga.App. 196 [395 S.E.2d 830].)[9] Wife had been granted summary judgment in the Georgia trial court on her action to domesticate the amended judgment on bifurcated issues, and husband had appealed, contending "that the trial court erred by granting summary judgment to appellee because the California court was without jurisdiction to adjudicate the appellee's interest in the appellant's real property in Georgia." (395 S.E.2d at p. 832.) The Georgia Court of Appeals goes on to state that: "This contention is based on *King* v. *King*, 203 Ga. 811, 48 SE2d 465, which holds that a foreign court may not adjudicate and vest title to Georgia real property. Although this may be an accurate statement of the law generally, it has no application to this case. Examining the California judgment on its four corners, we do not construe it as an attempt to change the title to the Georgia real property directly. Rather, the California court, as it was authorized to do, applied California community property law to determine whether appellee had an interest in the appellant's real and personal property in Georgia, which he attempted to obtain as separate property by the unauthorized conversion of community property. See *Wallack* v. *Wallack*, 211 Ga. 745, 747, 88 SE2d 154." (395 S.E.2d at p. 832.) The Georgia opinion continues: "Although the trial court determined that the appellee was entitled to a one-half interest in the appellant's real property, it is through the domestication of the California judgment that title will vest in appellee. See *Chidsey* v. *Brookes*, 130 Ga. 218, 220, 60 SE 529; OCGA § 53-3-47.

"The result urged by appellant would mean that all divorce actions involving real property in another state as a marital asset must be filed in every state in which a spouse owned real property, that the parties' divorce and disposition of the marital property would be subject to the laws of states of which they were not residents, and that the party seeking the division of the marital property would be forced to obtain personal jurisdiction over the other party in each state in which there was real property. Not only would such a process result in the expenditure of unnecessary time and expense, but such a procedure would favor parties who have absconded to avoid the reach of the law. Moreover, such a procedure, at a minimum, would run contrary to the spirit of the 'full faith and credit' clause of the Constitution of the United States." (395 S.E.2d at p. 832.)

---

[9] A certified copy of the Court of Appeals of Georgia's opinion had been included in the wife's declaration in support of requested sanctions, filed in response to this court's notice to the parties that we were considering an award of sanctions, and we take judicial notice thereof pursuant to the provisions of Evidence Code, section 452(a) permitting the taking of judicial notice of "the decisional . . . law of any state of the United States."

Since the Georgia appellate court considered its own Supreme Court's endorsement of the rule that a foreign court may not adjudicate and vest title to Georgia real property (*King* v. *King* (1948) 203 Ga. 811 [48 S.E.2d 465, 2 A.L.R.2d 1181]) and concluded that the amended judgment on bifurcated issues, by "its four corners" did not attempt to change Georgia title directly, which title change would only occur through domestication of the California judgment in Georgia, we therefore hold that under the facts of this case, there is no error in the amended judgment on bifurcated issues.

IV. *Sufficiency of the Evidence on Asset Distribution*

Husband argues, at length, the money judgment issued by the trial court was based on insufficient evidence. Husband attacks virtually every aspect of the money judgment, and contends it was contrary to the evidence presented at trial.

■ "The power of a reviewing court begins and ends with a determination of whether there is in the record substantial evidence, contradicted or uncontradicted, which supports the result reached; and we must also assume in favor of the determination below the existence of every fact which the trier of facts could have reasonably deduced from the evidence." (*In re Marriage of Gonzales* (1976) 57 Cal.App.3d 736, 745 [129 Cal.Rptr. 566], citation omitted.)

■ At trial, wife, faced with husband's defiance of the court's discovery orders, painstakingly reconstructed the couple's assets and debts. Wife's counsel summed up wife's dilemma when he described the task facing wife's expert witnesses' efforts to identify assets as "like an anthropologist constructing a dinosaur out of a jaw bone or an archaeologist that can construct an Inca temple out of a couple of stones."

In the face of monumental obstacles thrown in her path by husband, wife presented the trial court with expert testimony as to every known aspect of the couple's assets and liabilities. Douchette, a certified public accountant who prepared the couple's tax returns, testified husband had kept secret several foreign accounts and had concealed a large gain on the sale of a partnership. Kyprios, a private investigator, kept husband under surveillance in Greece. He produced photographs of real estate and personal property husband purchased in Greece.

Wife also presented lengthy, detailed testimony by Iacopi, a certified public accountant who located and valued assets found in California. Iacopi testified husband had taken without the court's permission $6,086,734 from both separate and joint accounts. Iacopi painstakingly retraced husband's

withdrawals and explained how he had calculated lost interest income on the amount husband misappropriated. Iacopi also testified as to the approximate amounts in various Georgia accounts, and estimated the amounts husband transferred overseas. As he introduced each figure, Iacopi explained how he derived the amount, and explained his method for calculating lost interest income. Iacopi also testified as to the debts owed by the community; the value of the parties' interest in closely held businesses; and he discussed at length the couple's joint tax liability. At the conclusion of Iacopi's testimony the court commented, "[A] very professional, thorough, comprehensive job."

Wife also presented evidence, via appraisals, of the value of the family home, furniture and furnishings. She also testified she had never agreed to purchase property in Greece.

Watkins, a Georgia attorney retained by the receiver, testified as to the difficulty he encountered in locating assets in Georgia.

The court, in a comprehensive 59-page statement of decision, considered each community asset and liability and cited the evidentiary and legal basis for each decision. The court carefully considered the trial testimony, and incorporated this testimony into its statement of decision. We find substantial evidence in support of the court's decision.

Therefore, we reject husband's volley of arguments regarding the court's division of the couple's property.

■ Husband contends "the trial court double charged Stavros for the liquid assets located in the State of Georgia in its money judgment in this case." According to husband, the court erred in awarding wife $3,762,314.77 based in part on $490,513.60 husband had secreted in Georgia bank accounts, while also, in its bifurcated judgment, giving wife a one-half interest in the misappropriated property located in Georgia. Husband argues this is not an equal division of community property. However, we note that under Civil Code section 4800, subdivision (b)(2) courts are *not* always required to divide community property equally: "As an additional award or offset against existing property, the court may award, from a party's share, any sum it determines to have been deliberately misappropriated by the party to the exclusion of the interest of the other party in the community estate." Thus, the court did not err in its ruling on the Georgia property.

■ Husband also argues the trial court double charged him for the assets located in Greece. Husband's rather convoluted reasoning asks us to

speculate as to how he paid for the assets located in Greece. If he paid for them with misappropriated funds, husband reasons, he should not be charged both for the funds and for the purchased assets. However, when considering the sufficiency of the evidence, "we must also assume in favor of the determination below the existence of every fact which the trier of facts could have reasonably deduced from the evidence." (*In re Marriage of Gonzales, supra,* 57 Cal.App.3d at p. 745.) Based upon the in-depth testimony of accountant Iacopi and private investigator Kyprios, we find sufficient evidence in support of the court's allocation of the assets located in Greece.

Husband challenges the sufficiency of the evidence in support of the trial court's determination that he had misappropriated $6,086,734 in cash from community assets. Husband also quarrels with the trial court's calculations in equalizing the property distribution between the parties in determining the parties' stock interest in A.G. Spanos Development, and in charging husband for the sale of partnership interests. However, the evidence before the trial court, which it cited in its statement of decision, is sufficient to support the trial court's judgment. Testimony by accountants, attorneys, an investigator and wife herself all support the trial court's decision. Husband attempts to bolster his argument with a myriad of tables which were never before the trial court, and which we will not consider for the first time on appeal. (*Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175, 1182 [210 Cal.Rptr. 99].)

## V. *Appointment of Receiver*

 Husband contends the trial court erred in appointing Freeman as the court's receiver. Freeman, according to husband, was an interested party, whose appointment violated Code of Civil Procedure section 566. Section 566 states, in part, "No party, or attorney of a party, or person interested in an action, or related to any judge of the court by consanquinity or affinity within the third degree, can be appointed receiver therein without the written consent of the parties . . . ."

At the outset we note that, despite husband's claim that Freeman "remains the court's receiver to this day," the record reveals Freeman's receivership was terminated on January 18, 1989, four months before husband's brief was filed.

The appointment of a receiver rests largely in the discretion of the trial court, and its action in appointing a receiver will not be disturbed by an appellate court in the absence of a showing of abuse of discretion. (*Goes* v. *Perry* (1941) 18 Cal.2d 373, 381 [115 P.2d 441].)

Husband objects to Freeman's appointment because of Freeman's alleged ties to Alex Spanos, wife's father. However, the only evidence presented by husband to substantiate these allegations against Freeman, is a declaration of husband, signed not by husband, but by husband's attorney.

At the hearing on husband's motion to remove the receiver, husband's attorney cross-examined Freeman about potential "interests" with Alex Spanos. Freeman testified he had represented corporations Spanos had ties to, but had represented Spanos personally on only one occasion. The court noted husband's concern about Freeman's links to Spanos. However, the court also noted Freeman was the most qualified individual to marshal the couple's property, given his knowledge of the inner workings of the corporations husband was involved in.

In its order denying husband's motion to remove receiver, the court enumerated its reasons for denial: "A. Respondent, Stavros P. Economou, is still in willful violation of numerous orders of this court; [¶] B. Respondent failed to appeal appointment of the said Receiver; [¶] C. The said Receiver, having substantial knowledge about the business affairs of the parties hereto, both corporate and personal, is the most qualified person to ferret out, marshal, and preserve the community property of the marriage; and [¶] D. The Receiver is a respected member of the California Bar and is bonded for one million dollars."

Given the evidence before it, the trial court did not err in denying husband's motion to remove Freeman as receiver.

VI. *Visitation Rights*

Finally, husband claims the visitation order issued by the trial court was unduly restrictive and not in the children's best interests. According to husband the trial court's visitation order was meant to punish husband for his misappropriation of community assets. Husband also claims the court erred in finding he was estopped from modifying the visitation order by his failure to mediate pursuant to Civil Code section 4607.[10]

In its order of May 15, 1987, the trial court issued an order granting husband physical custody of the couple's two young sons for forty days

---

[10] Civil Code section 4607 provided in pertinent part: "In any proceeding where there is at issue the custody of or visitation with a minor child, and where it appears on the face of the petition or other application for an order or modification of an order for the custody or visitation of a child or children that either or both such issues are contested, as provided in Section 4600, 4600.1, or 4601, the matter shall be set for mediation of the contested issues prior to or concurrent with the setting of the matter for hearing."

during the summer recess, for eight days during the Christmas holidays, for three days during Thanksgiving, and for eight days during Easter vacation. In addition, husband was granted physical custody for "a reasonable time upon reasonable notice when Respondent has the opportunity to be present in California."

After the court learned of husband's misappropriation of community funds, the court modified the May 15, 1987, order in August 1987. The court issued a statement of reasons regarding custody and visitation and granted sole custody of the two children to wife. The court further ordered husband "shall have visitation with the minor children at reasonable times and places to be designated by the court after the following conditions have occurred, to wit: "A. Respondent, after 20 days written notice to Petitioner, personally engages in mediation in this Court pursuant to Civil Code section 4607; and [¶] B. Respondent agrees to deposit his United States and Greek Passports with the Clerk of the Court; [¶] C. That all visitation shall be carried out within the County of San Joaquin, California unless written permission is given by Petitioner to Respondent and in such event visitation shall be carried out within the State of California. [¶] 3. Respondent shall be enjoined and restrained from removing the minor children from the County of San Joaquin."

Husband's contention that the court imposed these limitations to "punish" him is belied by the court's statement of reasons. The court, referred to the testimony at the four-day trial,[11] and stated: "2. Respondent is not trustworthy and has selfishly pursued a path of deviousness to deprive Petitioner of her rightful share of community property and the Court believes he will not cease such deviousness and deceit and will embark on similar tactics in order to deprive Petitioner of her custody and visitation rights in the same fashion that he has utilized to defeat and diminish her community property interests, to-wit: use of foreign jurisdictions to shield, conceal and protect himself and illgotten misappropriations from the jurisdiction of this Court; [¶] 3. Respondent having been born in Greece, having Greek citizenship, speaking fluent Greek and having over 1.8 million dollars at his disposal in international banking institutions has the knowledge and the means to secrete and/or remove the minor children to Greece and utilize Greek law to cause the said children to unlawfully (perhaps lawfully under Greek law) remain; [¶] 4. Respondent having the desire to deprive Petitioner of all of the fruit of the marriage, having the knowledge and means to do so, there be a clear and present danger that Respondent will act selfishly, dishonorably, and in violation of Court Orders and remove the

---

[11] At trial, husband was not precluded from offering evidence on the issue of visitation. Husband failed to provide any evidence, relying instead on his counsel's cross-examination of wife.

minor children from the jurisdiction of this Court and attempt to defeat Petitioner's right to custody and visitation; . . ." The court also noted wife's testimony concerning husband's threats to keep the children in Greece.

The court's statement of reasons reveals the court limited husband's visitation rights, not as a punishment for past acts, but as a means to prevent a potential future tragedy. The court in its statement of decision underscored husband's potential for future misdeeds: "Respondent's acts lead the Court to conclude that in his lust for money and material goods he has exalted the same over family, honesty, loyalty and honor. Respondent cannot be trusted; his word is worthless. He is more than a cad and a bounder, he is a con and a thief. [¶] In light of the above, and considering the experience and misadventures that occurred during the visitation of 1987 Christmas vacation and the testimony of Petitioner regarding her fears of the children being detained in a foreign country, the Court would never allow Respondent the opportunity to complete a pilfering of the children or anything else that is a fruit of the marriage." We are persuaded the court limited husband's visitation rights out of a concern for the welfare of the children, not out of a desire to punish husband.

We also reject husband's contention that the trial court erred in finding husband's failure to mediate estopped him from having the visitation order modified. Husband claims Civil Code section 4607 is "suggestive authority but not mandatory." Husband's contention is unsupported by any authority or any conceivable reading of the statute.

## VII. *Sanctions*

Wife seeks sanctions for a frivolous appeal pursuant to Code of Civil Procedure section 907 and California Rules of Court, rule 26(a). Under Code of Civil Procedure section 907, "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 26(a) provides in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

The standards for measuring whether an appeal is frivolous are specified *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [646 P.2d 179] and include the conclusion that an appeal is frivolous "when any reasonable attorney would agree that the appeal is totally and completely without

merit." (*Id*. at pp. 649-650.) Considering the argument which could have been and was mounted against the amended judgment on bifurcated issues as to the alleged vesting of title to Georgia real property, we cannot say that no reasonable attorney would have regarded the appeal as having merit as to that issue. Therefore, we cannot find husband's appeal frivolous or taken solely for delay, and therefore we must deny wife's request for sanctions.

### DISPOSITION

The judgment is affirmed. Wife is awarded costs on appeal.

Puglia, P. J., and Marler, J., concurred.