# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  ___September 16, 2015___

**NO. 33,649**

**THOMAS M. COUCH,**

     Plaintiff-Appellee,

v.                                                                                            **NO. 33,649**

**CHRISTIAN WILLIAMS, GEORGINA
WILLIAMS, and NEW MEXICO DEVELOPMENT
& CONSULTING, LLC,**

     Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
C. Shannon Bacon, District Judge**

Stephen P. Curtis, Attorney at Law, P.C.
Stephen P. Curtis
Albuquerque, NM

for Appellee

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Michael L. Carrico
Emil J. Kiehne
Kevin D. Pierce
Albuquerque, NM

for Appellants

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Christian and Georgina Williams (Defendants) appeal the district court's order forfeiting their interest in New Mexico Development and Consulting, LLC, (NMDC) to their co-owner, Thomas M. Couch (Plaintiff). The forfeiture order was imposed by the district court after it entered a default judgment against Defendants as a sanction for discovery abuses. Defendants argue that the district court erred in not holding an evidentiary hearing on the amount of Plaintiff's damages before ordering forfeiture of their interest. Agreeing, we reverse the damages award and remand for a hearing on Plaintiff's damages.

**BACKGROUND**

{2}     The present matter arises from a partnership gone bad. Plaintiff and Defendants were partners in NMDC, which owned a commercial office building in Albuquerque. Plaintiff and Defendants each owned fifty percent of NMDC. In March 2012 Plaintiff filed a petition for an accounting, alleging that Defendant Christian Williams had "appropriated [NMDC] funds for his own use and benefit," and "refused to provide copies of leases to [Plaintiff], . . . refused access to [NMDC's] bank account[,] and refused to provide any accounting as to [NMDC's] operations." Plaintiff made other

2

allegations to the effect that Defendants were mismanaging the commercial property and stated that "[i]t is not reasonably practicable to carry on the business of [NMDC] in conformity with [NMDC's] [a]rticles of [o]rganization and [o]perating [a]greement." Plaintiff prayed for an order "requiring Defendants to provide an accounting, for an award of damages as shown by the accounting[,] and for an award of punitive damages as proved at trial, for his costs and attorney[] fees[,] and for such other relief which the [c]ourt deems appropriate."

{3}     When Defendants did not timely answer the petition, Plaintiff moved for default judgment. Plaintiff also filed a motion for a preliminary injunction and appointment of receiver, accompanied by an affidavit supporting the motions. In the motion and affidavit, Plaintiff alleged that Defendants had incurred approximately $9146 in inappropriate costs to NMDC and tax penalties, as well as "numerous" overdraft and late charges on bank accounts and loans. Plaintiff also alleged that Defendants' mismanagement of the property led to tenant dissatisfaction. Defendants did not respond to these motions. At the hearing on the motions, the district court warned Defendants that it would "not entertain any further late filings in this matter[.]" The district court denied all of Plaintiff's motions and orally ordered the parties to engage in discovery. The district court also told the parties that "[u]ntimeliness will not be tolerated" in discovery.

{4} When Defendants did not respond to Plaintiff's first and second interrogatories and requests for production, Plaintiff filed two motions to compel. After a hearing, the district court granted the motions to compel and ordered Defendants to pay $1070 in attorney fees as a sanction. *See* Rule 1-037(D) NMRA. The district court noted at the hearing that "I have given Mr. Williams ample opportunity to rectify his course in this case [and] he [is] clearly thumbing his nose at those opportunities, and he [is] thumbing his nose at the court process." The district court's order warned, "Failure of . . . Defendants to comply with this [o]rder will be met with severe sanctions, including an [o]rder of [d]efault [j]udgment."

{5} In spite of this order, Defendants failed to provide any discovery to Plaintiff or to pay Plaintiff $1070. Plaintiff moved for sanctions and requested an order requiring Defendants "to turn over . . . all documents and records associated with [NMDC];" holding Defendants in contempt of court; and awarding attorney fees and costs. He also requested "such other sanctions as [are] appropriate." Meanwhile, Defendants' counsel moved to withdraw because he "ha[d] not been able to get ahold of Mr. Williams" and Mr. Williams was avoiding him. The district court then scheduled a hearing and included in the notice of the hearing that "Christian and Georgina Williams are to appear in person for this hearing."

{6} Defendants appeared at the hearing by telephone. Although he did not request it in the motions for sanctions, at the hearing Plaintiff argued for default judgment and forfeiture of Defendants' "membership interest in [NMDC]." Defendants' counsel conceded that sanctions were appropriate and argued "for a sanction that is reasonable in the [district c]ourt's opinion." He argued that default judgment was unreasonable because there was no "verification" of the figures presented by Plaintiff and "there [was] no noticing it." At the conclusion of the hearing, the district court observed that its previous orders had been "[t]otally ignored" and that there had been a "complete and absolute violation of [its] discovery order[.]" The district court ordered Defendants to provide all documents requested by Plaintiff within a week and to pay $5000 to Plaintiff for contempt of court. It stated, "Absent [compliance with its order, it would] take [Plaintiff] up on his proposal, which is a forfeiture of [Defendants'] interest in [NMDC]."

{7} Defendants provided Plaintiff with a password-protected QuickBooks file but did not provide the password and did not provide any other documents. Plaintiff then moved for a default judgment declaring Defendants' interest in NMDC forfeited, which was granted. Plaintiff concedes that "there was no evidence in the record at the time of the entry of [d]efault [j]udgment concerning the value of [NMDC]."

{8} Defendants then filed a motion for reconsideration, citing NMSA 1978, Section 39-1-1 (1917), and including an affidavit by Mr. Williams in which he averred that his "equitable interest in [NMDC] is approximately $500,000 to $600,000." Defendants made several arguments for why the default judgment was improper, including that the district court failed to hold a hearing on damages. Plaintiff's response to the motion disputed Mr. Williams's valuation of NMDC, arguing that each party's equity interest in NMDC was approximately $122,000. Plaintiff also argued that, in addition to the amounts allegedly embezzled by Defendants, he suffered a loss of $24,000 in income as a result of Defendants' mismanagement of NMDC. The district court declined to consider Defendants' evidence of the value of NMDC because it was not "newly discovered evidence" under Rule 1-060(B)(2) NMRA, and denied the motion for reconsideration. Defendants appealed.

**DISCUSSION**

**1. Scope of Appellate Review**

{9} We first define the scope of our review. Plaintiff argues that "the original [d]efault [j]udgment cannot be the subject of th[is] appeal[] because the [n]otice of [a]ppeal was filed more than [thirty] days after entry of the [d]efault [j]udgment." He argues that the only issue before this Court is the district court's denial of

Defendants' motion for reconsideration. We disagree because Plaintiff's premise conflicts with the rules of appellate procedure. Rule 12-201(D)(1) NMRA states that

> [i]f any party timely files a motion under Section 39-1-1 . . ., or files a motion under Rule 1-060(B) . . . that is filed not later than thirty . . . days after the filing of the judgment, the full time prescribed in this rule for the filing of the notice of appeal shall commence to run and be computed from the filing of an order expressly disposing of the last such remaining motion.

{10}     Defendants' motion for reconsideration was filed within thirty days of the filing of the judgment. *See* § 39-1-1; Rule 12-201(D)(1). Consistent with Rule 12-201(D)(1), the period for filing of the appeal commenced upon the district court's denial of that motion. In other words, the filing of the motion for reconsideration tolled the period in which the appeal could be filed. *State v. Romero*, 2014-NMCA-063, ¶ 6, 327 P.3d 525 ("[T]he pendency of a timely-filed motion for reconsideration generally has the effect of suspending the finality of the preceding judgment."); *see Grygorwicz v. Trujillo*, 2009-NMSC-009, ¶ 8, 145 N.M. 650, 203 P.3d 865 ("Rule 12-201(D) provides that if a party makes a post-judgment motion directed at the final judgment pursuant to Section 39-1-1, the time for filing an appeal does not begin to run until the district court enters an express disposition on that motion."). Since the appeal was filed within thirty days of the district court's entry of an order denying the motion for reconsideration, it is also timely.

{11} Plaintiff also argues that because the motion for reconsideration was filed "too late to be considered under Rule 1-059 [NMRA], . . . it must have been filed pursuant to Rule 1-060."[1] He appears to argue further that the appeal should be dismissed because Defendants have failed to address whether their motion met the requirements for relief from the judgment under Rule 1-060(B). This too is incorrect.

{12} Plaintiff's argument rests on a false dilemma: Plaintiff maintains that because motions filed within ten days of the judgment are deemed to be motions pursuant to Rule 1-059(E), any motion filed beyond that period must perforce be pursuant to Rule 1-060. But the cases cited in support of this position state only what happens when a motion is filed *within* ten days, not what happens when they are filed after that. For example, in *Albuquerque Redi-Mix, Inc. v. Scottsdale Insurance Co.*, the Supreme Court held that "a motion challenging a judgment, filed within ten days of the judgment, should be considered a Rule 1-059(E) motion to alter or amend a judgment." 2007-NMSC-051, ¶ 10, 142 N.M. 527, 168 P.3d 99. In *In re Estate of*

---

[1]At the relevant time, Rule 1-059(E) (2012) required motions to alter or amend a judgment to be filed within ten days after entry of the judgment. *See* Rule 1-059(E) (2012). The rule was modified in 2013 to allow thirty days for filing a motion to alter, amend, or reconsider judgment. Supreme Court Order No. 13-8300-032. The amended rule is effective for all cases pending or filed on or after December 31, 2013. *See* Rule 1-059(2013). Because Plaintiff's petition was filed in March 2012 our discussion of this argument is based on the rule as it existed before the 2013 amendments.

*Keeney*, this Court examined the federal rules of civil procedure and noted that under those rules "a motion is treated as either a motion to alter or amend the judgment under Rule [1-059(E)] or a motion for relief from judgment under Rule [1-060(B)]." 1995-NMCA-102, ¶ 11, 121 N.M. 58, 908 P.2d 751 (alteration, internal quotation marks, and citation omitted). In that case, because the motion was filed within ten days, it was considered under Rule 1-059(E). *In re Estate of Keeney*, 1995-NMCA-102, ¶ 11. The Court did not address, however, whether New Mexico adopted the federal practice rule for when a motion is filed beyond the ten-day window or the impact of Section 39-1-1 on its analysis. *In re Estate of Keeney*, 1995-NMCA-102, ¶ 11; *see Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323 ("The general rule is that cases are not authority for propositions not considered.").

{13} Indeed, several more recent cases have held that Section 39-1-1 provides a third avenue for challenging a judgment. In *Rosales v. State Taxation & Revenue Department, Motor Vehicle Division*, 2012-NMCA-098, 287 P.3d 353, this Court concluded that a motion for reconsideration that cited only Section 39-1-1 and that was filed more than ten days after the judgment "f[ell] within the purview of Section 39-1-1 only." *Rosales*, 2012-NMCA-098, ¶ 7. Similarly, in *Chapel v. Nevitt*, 2009-NMCA-017, 145 N.M. 674, 203 P.3d 889, we held that "[b]ecause a motion for

9

reconsideration filed within ten days of the final judgment is deemed to be a Rule 1-059(E) motion, a motion filed outside of the ten-day period should logically be deemed to have been filed under Section 39-1-1[.]" *Chapel*, 2009-NMCA-017, ¶ 18; *cf. Century Bank v. Hymans*, 1995-NMCA-095, ¶ 10 n.1, 120 N.M. 684, 905 P.2d 722 (stating that "when a post-judgment motion is timely under both Section 39-1-1 and Rule 1-060[,] . . . the time for appeal from the judgment should be determined by treating the motion as one pursuant to Section 39-1-1"). We conclude that the district court erred in construing the motion under Rule 1-060(B). Hence, to the extent the district court relied on Rule 1-060(B) when it declined to consider Defendants' evidence related to the value of NMDC, we conclude that such reliance was error.

**2.      A Hearing on Damages Is Required**

{14}      As a preliminary matter, we emphasize that the question before this Court is a narrow one. First, Defendants do not challenge the propriety of the district court's discovery orders, the imposition of sanctions, or even the entry of default judgment against them. Instead, Defendants challenge only the amount of damages awarded. Second, the parties do not appear to dispute the basic parameters of the rules at issue here or their essential functions. Instead, they dispute whether the guidelines for default judgments found in Rule 1-055(B) NMRA apply to default judgments entered as a sanction under Rule 1-037. Plaintiff argues that the district court correctly held

10

that they do not. Defendants argue the opposite and that the matter must be remanded for a hearing on damages consistent with Rule 1-055(B). We agree with Defendants.

**{15}** Generally, "[t]he choice of sanctions for abuse of the discovery process falls within the sound discretion of the trial court and will be reversed only for abuse of discretion." *Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 15, 129 N.M. 586, 11 P.3d 550. The district court "abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *Trinosky v. Johnstone*, 2011-NMCA-045, ¶ 23, 149 N.M. 605, 252 P.3d 829 (internal quotation marks and citation omitted). We review the district court's construction of the rules of procedure de novo. *Id.*

**{16}** We begin with the rules themselves. Rule 1-037(B)(2)(c) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, [including] . . . rendering a judgment by default against the disobedient party[.]" "Dismissal is a severe sanction, but the district court is justified in imposing the sanction and does not abuse its discretion when a party demonstrates flagrant bad faith and callous disregard for its discovery responsibilities." *Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶ 10, 129 N.M. 639, 11 P.3d 603 (alteration, internal quotation marks, and citation omitted). "Furthermore, despite the severity of dismissal as a sanction, the district court is not required to impose lesser sanctions

before it imposes the sanction of dismissal." *Id.* (internal quotation marks and citation omitted).

{17} Rule 1-055(B) provides:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties entitled thereto.

Although this provision gives the district court discretion to conduct a hearing to determine the amount of damages, "where the claim for damages is unliquidated, it would be an abuse of discretion not to have a hearing and to put [the] plaintiff to the test of presenting evidence to support the claim for damages." *Armijo v. Armijo*, 1982-NMCA-124, ¶ 15, 98 N.M. 518, 650 P.2d 40; *see Rodriguez v. Conant*, 1987-NMSC-040, ¶ 15, 105 N.M. 746, 737 P.2d 527 ("[The Supreme] Court often has held that the district court must conduct an evidentiary hearing pursuant to its Rule 1-055(B) authority when the plaintiff seeks an award of an unliquidated amount of damages."); *see Black's Law Dictionary* 473 (10th ed. 2014) (defining "liquidated damages" as "[a]n amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches" and stating that "[i]f the parties to a contract have properly agreed on liquidated damages, the sum fixed is the measure of damages for a breach, whether it exceeds or falls short

12

of the actual damages"). In *Gallegos v. Franklin*, this Court explained that a hearing is necessary because "[t]he entry of a default judgment against a defendant is not considered an admission by [the] defendant of the amount of unliquidated damages claimed by [the] plaintiff." 1976-NMCA-019, ¶ 40, 89 N.M. 118, 547 P.2d 1160 (internal quotation marks and citation omitted). In the hearing, the defaulting defendant has a "right to cross-examine [the] plaintiff's witnesses and to introduce affirmative testimony on his own behalf in mitigation of damages." *Id.* ¶ 41.

{18} There is no explicit language in the rules stating that Rule 1-055(B) applies to Rule 1-037 sanctions. On the other hand, there is no indication that the term "default judgment" listed as a possible sanction in Rule 1-037(B) should be interpreted differently than the same term used in other rules. Similarly, nothing in Rule 1-055(B) indicates that its provisions do not apply when a default judgment is entered as a sanction.

{19} When construing Supreme Court rules, we apply the same principles of construction as are applied to statutes. *Walker v. Walton*, 2003-NMSC-014, ¶ 11, 133 N.M. 766, 70 P.3d 756 ("We apply the same rules to the construction of rules of procedure adopted by our supreme court as are applied to statutes.") (internal quotation marks and citation omitted). These principles require us to strive to "read the rules as a whole." *H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 2008-NMCA-

13

013, ¶ 10, 143 N.M. 404, 176 P.3d 1136. "The court's duty is to, so far as practicable, reconcile different provisions so as to make them consistent, harmonious and sensible." *State ex rel. Clinton Realty Co. v. Scarborough*, 1967-NMSC-152, ¶ 9, 78 N.M. 132, 429 P.2d 330. In addition, "a normal rule of statutory construction [is] to interpret identical words used in different parts of the same act as having the same meaning." *State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659 (alteration, internal quotation marks, and citation omitted). Interpreting the language of Rules 1-037 and 1-055 according to these principles, we conclude that there is no distinction between default judgments under Rules 1-037 and 1-055(B) and that the Supreme Court intended a default judgment entered as a sanction under Rule 1-037(B) to be subject to Rule 1-055(B).

{20} Our case law reflects this intent. In *Gallegos*, this Court invoked both Rule 1-037 and Rule 1-055(B) in its analysis of the district court's award of default judgment damages. *Gallegos*, 1976-NMCA-019, ¶ 32. The Court noted that while counsel for the defendants entered an appearance, the defendants never answered the complaint, thus seeming to invoke Rule 1-055(A)'s provision for default for failure to answer. *Gallegos*, 1976-NMCA-019, ¶ 4. In addition, however, it noted that the district court entered a finding that "[the d]efendants [were] in default in their willful failure to make discovery as set by the Rules of Civil Procedure and that judgment should be

14

entered against them for their default." *Id.* ¶ 17. Citing both Rule 1-037(D) and Rule 1-055(A), it affirmed the district court's entry of default, stating, "[for] a period of ten months, the defendants failed to comply with the Rules of Civil Procedure. A default judgment may be entered." *Gallegos*, 1976-NMCA-019, ¶ 32. It went on to analyze the damages award under Rule 1-055(B). *Gallegos*, 1976-NMCA-019, ¶¶ 40, 42. Ultimately, it remanded for "a hearing in which evidence may be presented by the plaintiff as to damages to be awarded [the] plaintiff, compensatory and punitive, with the right granted to [the] defendants to contest this issue." *Id.* ¶ 50.

{21} Here, the district court held that *Gallegos* was distinguishable from the present matter because in that case "default judgment was entered under Rule [1-055(B)]." We do not agree. Although it is not entirely clear whether the default judgment in that case was based on the defendants' failure to answer or to comply with the discovery rules, because both Rule 1-037 and Rule 1-055 are cited, the clear implication of *Gallegos* is that Rule 1-055(B) applies to default judgments entered as a discovery sanction.

{22} To the extent the district court relied on the *United Nuclear Corp. v. General Atomic Co.* Court's statement that "[t]here is no requirement under Rule [1-037(B)] that an evidentiary hearing be held before sanctions are imposed" to reject Defendants' argument that "the [district c]ourt [was] required to hold a hearing on

15

damages," we disagree that *United Nuclear* can be applied to categorically preclude a damages hearing in the present matter. 1980-NMSC-094, ¶ 375, 96 N.M. 155, 629 P.2d 231. We do not read *United Nuclear* as broadly as the district court did because (1) the Court made clear that its analysis of the necessity of a hearing was highly contextual; and (2) the Court was addressing the propriety of the sanction itself, not the measure of damages.

{23}   First, after stating that evidentiary hearings are not required by Rule 1-037(B), the *United Nuclear* Court stated that "[u]nder our rules, a court may decide motions on the basis of affidavits, oral testimony or depositions." 1980-NMSC-094, ¶ 375 (citing current Rule 1-043(C) NMRA). Its analysis of the need for a hearing focused on the fact that "[the defendant's] failures to make good faith discovery are mirrored in the record." *Id.* ¶ 377 (internal quotation marks and citation omitted). That being the case, "[n]o amount of oral testimony could alter those aspects of the history of this litigation." *Id.* Moreover, the defendant's own affidavits "did not demonstrate any need for such a hearing." *Id.* ¶ 378. The Court therefore concluded that no hearing was necessary because the evidence in the record, including affidavits submitted by both sides, was sufficient to support the district court's findings of bad faith in discovery. *Id.* ¶ 383.

16

{24} The Court took pains to explain that the need for an evidentiary hearing is evaluated in the context of the record. *See id.* ¶ 375 ("Evidentiary hearings in cases involving the imposition of discovery sanctions have been required under some, but not all circumstances."). It stated that "[t]he requirements of due process are not technical, and no particular form of procedure is necessary for protecting substantial rights. The circumstances of the case dictate the requirements. The integrity of the fact-finding process and the basic fairness of the decision are the princi[pal] considerations." *Id.* ¶ 376 (internal quotation marks and citation omitted). *United Nuclear*, therefore, stands for the proposition that where the evidence in the record is sufficient to support imposition of sanctions, no hearing is required. But where that is not true, an evidentiary hearing may be necessary.

{25} Second, and most significantly, the statement in *United Nuclear* pertained to whether the district court erred in imposing discovery sanctions without a hearing—it did not pertain to the award of damages as a result of a sanction. *Id.* ¶ 375. The distinction between these two issues is clear in our case law. *See, e.g.*, *Armijo*, 1982-NMCA-124, ¶ 14 ("New Mexico decisions recognize that liability and damages are different and separate concepts."); *Herrera v. Springer Corp.*, 1973-NMCA-041, ¶ 42, 85 N.M. 6, 508 P.2d 1303, *aff'd in part, rev'd in part*, 1973-NMSC-057, 85 N.M. 201, 510 P.2d 1072. Indeed, the *United Nuclear* Court stated that "[a]fter entry

17

of the sanctions order and default judgment, the [district] court conducted a trial on damages[,]" 1980-NMSC-094, ¶ 431, and that such a trial was required under *Gallegos*. *United Nuclear*, 1980-NMSC-094, ¶ 431 n.165 (noting that "the prevailing parties must prove the damages to which they are entitled"). The district court erred in relying on *United Nuclear* for the proposition that a hearing on damages after default judgment is not required.

{26}     Finally, Plaintiff argues that this Court should affirm the default judgment and damages award in its entirety as a vindication of the district court's authority and to protect the integrity of the judicial process. He maintains that a reversal would permit "future defendants anywhere . . . [to] withhold evidence with impunity" because without such evidence a plaintiff will be unable to prove damages. We are unpersuaded. A default judgment is a drastic sanction, regardless of the amount of damages awarded. *Marshall v. Providence Wash. Ins. Co.*, 1997-NMCA-121, ¶ 29, 124 N.M. 381, 951 P.2d 76 (describing dismissal as a "severe" sanction to be used in "extreme" circumstances). Because of the default judgment, Defendants here may no longer contest liability. *Gallegos*, 1976-NMCA-019, ¶ 40 ("A default judgment entered on well-pleaded allegations in a complaint establishes [the] defendant's liability."). Moreover, our holding today does not diminish the district court's power to sanction recalcitrant parties through default judgment or its contempt power. But

18

"[d]iscovery sanctions cannot be imposed to . . . bestow an unwarranted 'windfall' on the adversary." *In re Marriage of Economou*, 274 Cal. Rptr. 473, 478 (Ct. App. 1990). Here, Plaintiff concedes that there was no evidence in the record of the value of NMDC or the parties' equity in it at the time the district court concluded that Defendants had forfeited their interest in NMDC. Thus, the district court's finding in the order for default judgment that "[t]he damages suffered by Plaintiff equal or exceed the equity in [NMDC]" is not supported by the evidence. Furthermore, although the parties attempted to provide evidence as to the value of NMDC and their equity in it as part of their pleadings related to Defendants' motion for reconsideration, the district court declined to consider this evidence because it was not "newly discovered evidence" under Rule 1-060(B)(2). The record is therefore devoid of supported findings as to the value of NMDC and the parties' equity in the company. Consequently, it is not clear whether forfeiture of Defendants' share of NMDC is commensurate with Plaintiff's damages or not. In the absence of evidence to support it, the damages award cannot stand. *See Armijo*, 1982-NMCA-124, ¶ 15 (stating that the plaintiff must provide evidence to support a damages award).

**CONCLUSION**

{27}     We conclude that Plaintiff was required to prove his damages after entry of the default judgment and that Defendants were entitled to contest such damages or submit

19

mitigating evidence. The district court erred in ruling to the contrary. We reverse the damages award and remand to the district court for a hearing on Plaintiff's damages.

{28}     **IT IS SO ORDERED.**

                                        _____

                                        **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**J. MILES HANISEE, Judge**