807 P.2d 757

**Jennifer FOWLER–PROPST and David Propst, Plaintiffs–Appellants,**

v.

**Joa DATTILO, Defendant–Appellee.**

**No. 12140.**

Court of Appeals of New Mexico.

Jan. 22, 1991.

Certiorari Denied March 27, 1991.

Ellen S. Casey, Hinkle, Cox, Eaton, Coffield & Hensley, Santa Fe, for plaintiffs-appellants.

Winston Roberts–Hohl, Santa Fe, for defendant-appellee.

OPINION

HARTZ, Judge.

The district court ruled that newly discovered evidence required setting aside a judgment in favor of plaintiffs. Plaintiffs contend that the district court erred because the new evidence concerned an event that did not occur until after trial. We reverse. A new trial should not be granted solely on the ground that a post-trial event undercuts a prediction which formed the basis for the assessment of damages.

Plaintiffs sued defendant Dattilo for misrepresentation and professional negligence relating to the sale of a house that turned out to have an inadequate water well. On July 11, 1989, the jury returned a verdict in favor of plaintiffs, finding that the house was worth $69,560.02 less than it would have been worth with a proper well. Judgment was entered on the verdict on July 26. The following month plaintiffs put the house on the market. They sold it on October 4 for a price greater than what they had paid for it and much greater than the value estimated by their witnesses at trial. On October 20 Dattilo filed a motion pursuant to SCRA 1986, 1–060(B)(2), requesting that the judgment be set aside on the ground that the sale demonstrated that plaintiffs had suffered no damage. The district court granted a new trial, ruling that "after-occurring events which shed light on a condition which was at issue at the trial" constitute newly discovered evidence.

Rule 1–060(B) sets forth the grounds upon which a final judgment may be set aside by the district court. The pertinent portion of the rule states:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 1–059 [governing motions for new trial];

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been

reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one-year after the judgment, order or proceeding was entered or taken.

 B(2), which concerns newly discovered evidence, is the provision cited both in Dattilo's motion to set aside the judgment and in the district court's order. No other provision applies in this case. On appeal Dattilo asserts for the first time that her motion "gives rise to an inference of fraud by the plaintiffs," apparently attempting to rely on B(3) as authority for the district court's order. Her district court motion, however, included no allegation of fraud. Because Dattilo did not plead or prove fraud, B(3) does not apply. *Cf.* SCRA 1986, 1–009(B) (must plead fraud with particularity); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 877 n. 24 (5th Cir.1984) (must plead fraud with particularity in independent proceeding to reopen judgment); *Brown v. Pennsylvania R.R.*, 282 F.2d 522, 527 (3d Cir.1960) (to prevail under Federal Rule of Civil Procedure 60(b)(3) there must be clear and convincing evidence of fraud), *cert. denied*, 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1961). In her appellate brief Dattilo also explicitly contends that she can rely on B(6). We reject that contention as well. B(6) cannot serve as an excape hatch when new evidence does not satisfy the requirements for being "newly discovered evidence." It is limited in scope to reasons not addressed in the five preceding clauses. *See Rios v. Danuser Machine Co.*, 110 N.M. 87, 792 P.2d 419 (Ct.App.1990); *Corex Corp. v. United States*, 638 F.2d 119 (9th Cir.1981).[1]

---

1. In *National Anti–Hunger Coalition v. Executive Committee*, 711 F.2d 1071, 1075 n. 3 (D.C.Cir. 1983), the court suggested that a report issued shortly after judgment could show the pre-judgment intentions of the report's authors and therefore justify a new trial under Federal Rule of Civil Procedure 60(b)(6) (the equivalent of our Rule 1–060(B)(6)). But the statement was pure dictum and the scope of the court's suggestion is not entirely clear.

■ The question to be decided in this case is part of the broader question of when, if ever, evidence that comes into existence after trial can be considered "newly discovered evidence" within the meaning of Rule 1–060(B)(2). Because the issue has not arisen in reported New Mexico decisions, we examine precedents from other jurisdictions. In particular, cases interpreting Federal Rule of Civil Procedure 60(b), upon which our Rule 1–060(B) is based, are persuasive. *See Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 659 P.2d 888 (1983).

Generally, courts have required that "the evidence must have been in existence at the time of the trial." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2859, at 182 (1973). The leading, if not the first, case in support of this proposition is *Campbell v. American Foreign S.S. Corp.*, 116 F.2d 926 (2d Cir.), *cert. denied*, 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530 (1941). In *Campbell* the defendant moved for a new trial because the plaintiff, who had been awarded damages for personal injury, obtained a sedentary job as a union official after the trial. The defendant argued that a new trial was necessary because damages turned out to be excessive. The court wrote:

> If it were ground for a new trial that facts occurring subsequent to the trial have shown that the expert witnesses made an inaccurate prophecy of the prospective disability of the plaintiff, the litigation would never come to an end. The weight of authority is against the granting of a new trial on the ground of unexpected improvement in the plaintiff's condition, unless the evidence is sufficient to show fraud.

*Id.* at 928. *Accord Ryan v. United States Lines Co.*, 303 F.2d 430 (2d Cir.1962) (worker denied new trial to seek greater damages when examination ten months after trial revealed increased disability). A number of other courts have reached the same conclusion, denying new trials because of the fear of never-ending litigation. *See, e.g., Brown v. Pennsylvania R.R.* (after trial, defendant declared plaintiff unfit to work and laid him off); *Prostrollo v. Uni-versity of S.D.*, 63 F.R.D. 9 (D.S.D.1974) (evidence of grades of on- and off-campus students awarded in semester that ended after trial); *Anthony v. Earnest*, 443 So.2d 1256 (Ala.Civ.App.1983) (after award of damages for defendant's failure to provide water supply to property, it was error to vacate judgment on ground that after trial the water authority had completed a line to plaintiff's property); *Patrick v. Sedwick*, 413 P.2d 169 (Alaska 1966) (post-trial discovery of new technique to treat plaintiff's condition); *Wagner v. Loup River Pub. Power Dist.*, 150 Neb. 7, 12, 33 N.W.2d 300, 303–304 (1948) ("A failure of justice in a particular instance is ofttimes not so great an evil as that there should be no certain end to litigation"); *In re Disconnection of Certain Territory from Highland City*, 668 P.2d 544 (Utah 1983) (post-judgment annexation by city of land adjacent to land disconnected from city by the judgment).

The rule articulated in Wright and Miller has not always been strictly followed. Some courts have considered newly discovered evidence to include post-trial recantations by witnesses, *see Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 516 (8th Cir.) (grand jury testimony shows that testimony offered at trial was perjured), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *cf. City of Mesquite v. Scyene Inv. Co.*, 295 S.W.2d 276 (Tex.Ct.App.1956) (author of affidavit used to obtain summary judgment retracts on ground of misunderstanding), and post-judgment expert analysis of documents that had existed at the time of trial. *See Chilson v. Metropolitan Transit Auth.*, 796 F.2d 69 (5th Cir.1986) (post-trial audit establishing overpayment).

Of particular pertinence are cases which have permitted new trials on the ground that a post-judgment event shows the inaccuracy of an opinion expressed at trial as to value or condition. In a case very similar to the one before us, *Forshagen v. Payne*, 225 S.W.2d 229 (Tex.Ct.App.1949), damages had been awarded to the plaintiffs because a lot did not have a working water well, as had been represented by the defendant. Shortly after trial the plaintiffs

resold the lot at approximately the price they had paid for it. The appellate court affirmed the trial court's order setting aside the prior judgment and awarding a new trial. It found no obstacle to considering post-trial evidence to be "newly discovered evidence" and explained, "[J]ustice and fairness would require re-examination of the question of damages in another trial." *Id.* at 231.

In *Vanalstyne v. Whalen,* 15 Mass.App. 340, 445 N.E.2d 1073 (1983), a personal injury plaintiff suffered his first epileptic seizures several weeks after judgment. The court affirmed a grant of a new trial. It reasoned that although the seizures were post-trial evidence, they proved a pre-judgment fact—the plaintiff's actual medical condition at the time of trial.

Other courts, however, have followed the Wright–and–Miller rule in such circumstances. In another case like this one, *Bachtle v. Bachtle,* 494 A.2d 1253 (Del. 1985), a former spouse sought to modify a property division on the ground that the sale price of the marital residence substantially exceeded the estimate at trial. The Delaware Supreme Court refused to set aside the judgment.

Similarly, in *Rogers v. Ogg,* 101 Ariz. 161, 416 P.2d 594 (1966) (in banc), the defendant in a personal injury case moved for a new trial on the ground that the plaintiff, who had been compensated for brain damage, had been graduated from high school and had completed six semesters of college after the trial. These post-trial events presumably established that the plaintiff's brain condition at the time of trial was not as bad as the jury had found. Yet the motion was denied.

█ Underlying the results in decisions such as *Rogers* and *Bachtle* is a policy consideration that we find dispositive here. In those cases, as in this one, everyone knew that the fact finder was not determining a historical truth but was making an estimate, a prediction of future events, to establish damages.[2] For example, in personal injury litigation, experts attempt to assess the injured party's condition in order to predict future disability, medical care, pain and suffering, etc. Both parties know that their expert testimony may be proved wrong by subsequent events. Yet neither expects a favorable damage award to be set aside when future events show that the prediction was inaccurate. Such adjustments could go on indefinitely, leading to multiple reopening of a single case. Parties take their chances based on the information existing at the time of trial. As stated more than half a century ago in *Woods v. Kentucky Traction & Terminal Co.,* 252 Ky. 78, 86, 65 S.W.2d 961, 964 (Ky.Ct.App.1933):

> The courts, upon considerations of public policy, as a rule are not favorable to the granting of new trials on newly discovered evidence claiming to show a changed condition subsequent to trial * * * "particularly where verdicts rest in any degree upon expert evidence as to future resultant conditions reasonably to be apprehended." Especially are they inclined to regard with disfavor evidence as to subsequent events disproving the character or extent of bodily injury for which recovery was had, as where subsequent to a trial for damages for personal injuries something occurs showing that the bodily condition of plaintiff was not such in fact as was supposed to be by the jury. [Citations omitted in original.]

*Accord Nordin Constr. Co. v. City of Nome,* 489 P.2d 455, 473 (Alaska 1971) ("If it were grounds for a new trial that facts occurring subsequent to the trial have shown an inaccurate prophecy, litigation would never come to an end").

The very presence of statutory mechanisms to adjust for future events in assessing damages—such as the fund created by the Medical Malpractice Act to pay future medical bills, *see* NMSA 1978, Section 41–5–7 (Repl.Pamp.1989), and the provisions of the Workers' Compensation Act for payment of future medical expenses and for

---

**2.** When the judgment provides relief other than damages, post-trial events may justify setting aside the judgment. *See, e.g.,* R. 1–060(B)(5) (no longer equitable that judgment have prospective application).

reevaluation of the worker's condition, *e.g.*, NMSA 1978, Section 52-1-56 (Repl.Pamp. 1987)—suggests that the common understanding is that in other circumstances the trial puts an end to such inquiries. In other words, the parties expect post-judgment repose. Indeed, the regularity with which parties seek lump-sum settlements for medical expenses under the Medical Malpractice Act and the Workers' Compensation Act illustrates the attraction that certainty and repose hold for all parties.

The reasonable expectations of the parties should be no different in a case like the one before us. When witnesses value an item of property, they are in essence predicting what a willing buyer would pay a willing seller. Everyone at trial knows that the testimony consists of estimates. Everyone knows that the estimates may be wrong, even quite wrong. No one expects the trial to be put off until the occurrence of some definitive event that establishes damages with certainty. Nevertheless, all expect the trial to end the controversy.

Because the grant of a new trial by the district court was founded on a post-trial event that is material solely to undermine the predictions of experts at trial relating to damages, we reverse the district court with directions to reinstate the original judgment.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.