905 P.2d 722

**CENTURY BANK, a Federal Savings Bank, Plaintiff–Appellee,**

v.

**Stewart HYMANS and Dana Lesnett, Defendants–Appellants.**

No. 16438.

Court of Appeals of New Mexico.

Aug. 1, 1995.

Holly A. Hart, Scheuer, Yost & Patterson, P.C., Santa Fe, for Plaintiff–Appellee.

Stewart Hymans, Santa Fe, Pro Se.

### OPINION

HARTZ, Judge.

After paying a judgment to avoid a foreclosure sale, Stewart Hymans decided that he had paid more than what was required by the judgment. He sought relief by a motion filed in the same proceeding in which the judgment had been entered. The district court denied the motion and Hymans appeals. His appeal requires us not only to construe the judgment but also to determine whether Hymans followed proper procedure in pursuing relief. We hold that Hymans' motion was authorized by SCRA 1986, 1–060(A) (Repl.1992); the motion was timely; his notice of appeal was timely; and he is entitled to restitution for any overpayment.

## I. BACKGROUND

Hymans and Dana Lesnett defaulted on a promissory note (the Note) to Century Bank (the Bank). The Note was secured by a mortgage to the Bank. After filing suit on January 25, 1991, the Bank obtained a summary judgment against Hymans and Lesnett and a foreclosure decree. On November 10, 1992, the day before the foreclosure sale was scheduled, Hymans paid the Bank $260,971.13. Two weeks later the Bank filed a satisfaction of judgment.

On December 11, 1992 Hymans wrote the Bank to request an itemization of the principal, legal fees, costs, and interest that he had paid to obtain the satisfaction of judgment. After an exchange of correspondence, the Bank paid Hymans a refund of $142.26 on February 9, 1993. Six days later Hymans filed in district court a pleading entitled "Motion to Modify Summary Judgement." The motion requested the court to (1) determine the amounts owed the Bank under the terms of the Note, (2) find that the Bank waived certain late charges after it obtained the judgment, (3) determine the amount paid to the Bank on November 10, 1992, (4) modify the judgment to take the above matters into

account and order the Bank to return to Hymans and Lesnett any excess amounts they had paid, and (5) find that the Bank had violated the New Mexico Bank Installment Loan Act, NMSA 1978, §§ 58–7–1 to –9 (Repl.Pamp.1991), and provide Hymans and Lesnett relief under that act. On March 2, 1993 Hymans amended his motion to add a request for relief under the National Bank Act, 12 U.S.C.A. §§ 21–86 (West 1989), and the New Mexico Residential Home Loan Act, NMSA 1978, §§ 56–8–22 to –30 (Repl.1986). His memorandum in support of his motion also relied on state usury and disclosure laws, NMSA 1978, §§ 56–8–11.1, –11.2, and –11.3 (Repl.1986). After an evidentiary hearing the district court denied Hymans' motion on November 14, 1994, stating that it found "no facts which would justify a modification of the Summary Judgment or a determination that the [Bank] failed to comply with the terms of the judgment in obtaining payment from Defendant Hymans." Hymans filed his notice of appeal on December 14, 1994.

Hymans asserts on appeal that the district court erred in approving the Bank's calculations of attorney's fees and interest and in failing to impose a sanction on the Bank pursuant to state usury and disclosure laws. With respect to attorney's fees, the Bank concedes that it erroneously double billed Hymans $510.19, and Hymans' briefs fail to point to any other error in the calculation of fees, so we need not address that matter further.

■ We also need not address Hymans' claims under the usury and disclosure laws. He asserts that the Bank violated Sections 56–8–11.1, –11.2, and –11.3 in calculating the amount owed on the judgment and informing him of the amount owed. Those statutory provisions, however, were repealed effective June 14, 1991, more than a year before the conduct of which he complains. Absent a saving clause to the contrary, a statute does not ordinarily govern conduct occurring after the statute's repeal. *See Rodgers v. City of Loving,* 91 N.M. 306, 308, 573 P.2d 240, 242 (Ct.App.1977). We recognize that a legislative enactment (including an enactment that repeals earlier laws) cannot be applied to a "pending" case, N.M. Const. art. IV, § 34,

but a case is no longer "pending" once a final judgment is filed. *See Stockard v. Hamilton,* 25 N.M. 240, 244–45, 180 P. 294, 295 (1919). Thus, even though the repeal occurred after the Bank's complaint was filed, our Constitution does not require that the repealed provisions govern matters arising after final judgment. *See id.* (garnishment provisions enacted after final judgment apply to subsequent garnishment proceeding); *Church's Fried Chicken No. 1040 v. Hanson,* 114 N.M. 730, 732–33, 845 P.2d 824, 826–27 (Ct.App.1992), *cert. denied,* 114 N.M. 577, 844 P.2d 827 (1993). The repealed provisions could not afford Hymans any relief.

That leaves for our consideration only the calculation of interest. Before we can resolve that matter, however, we must confront procedural issues raised by the Bank. The Bank contends that Hymans' district court motion was untimely and so was his notice of appeal.

## II. PROCEDURAL ISSUES

■ Hymans' plea is that he overpaid the Bank to stop the foreclosure sale and now he is entitled to refund of the excess. He states a proper claim for restitution. *See* Restatement of Restitution § 20 (1936); *Reynolds v. Slaughter,* 541 F.2d 254 (10th Cir.1976); *Best v. Best,* 470 N.E.2d 84, 88 (Ind.Ct.App.1984). Hymans might have sought identical relief by filing an independent action, but instead he proceeded by motion in the same proceeding in which the judgment against him had been entered.

■ Although the parties have not cited, and we have not found, any reported case in which a plaintiff has sought restitution predicated on overpayment of a valid judgment, we have found authority for obtaining restitution by motion in similar circumstances. When a party pays a judgment and the judgment is then reversed or modified on appeal or by post-judgment order, the payor can obtain restitution without bringing a new action; it may move the trial or appellate court for relief, or the court may grant relief on its own initiative. *See Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust,* 824 F.2d 765, 767 (9th Cir.1987); Restatement of Restitution § 74 cmt. a (1936). We infer

from this authority that if a court has jurisdiction to determine that a party has overpaid a judgment, the court has ancillary jurisdiction to order restitutionary relief. Thus, the question becomes whether Hymans filed a proper, timely motion requesting the district court to determine that he had overpaid the judgment debt.

The Bank contends that Hymans' motion was untimely and, even if the motion was timely, his notice of appeal was untimely. It asserts that Hymans' post-payment motion was governed by NMSA 1978, Section 39–1–1 (Repl.Pamp.1991). Under that section, motions directed against a judgment must be filed within 30 days after entry of the judgment; also, if the district court fails to rule upon the motion within 30 days of its filing, the failure to rule is deemed a denial of the motion. *See id.* The Bank concludes that the very latest a motion pursuant to Section 39–1–1 could have been filed was 30 days after the filing of the satisfaction of judgment on November 14, 1992. If the Bank is correct on this point, then Hymans' motion in February 1993 was untimely. In addition, the Bank contends that even if the motion was timely, it was deemed denied 30 days after it was filed because the district court had not by that time acted on the motion. Hymans' notice of appeal should then have been filed within 30 days after the motion was deemed denied. This date would have been in April 1993, 20 months before the notice of appeal was actually filed. We disagree with the Bank's analysis.

## A. Timeliness of Motion

■ Regardless of the time limitations imposed by Section 39–1–1, Hymans' motion was timely. For reasons we will set forth shortly, we can consider the motion, or at least the portions of the motion pertinent to the calculation of interest, as having been brought pursuant to Rule 1–060. If the mo-

tion was of a type authorized by both Section 39–1–1 (a matter which we need not decide) and Rule 1–060, the district court could consider the motion if it was timely under Rule 1–060 even if it was not timely under Section 39–1–1. *See Archuleta v. New Mexico State Police,* 108 N.M. 543, 547, 775 P.2d 745, 749 (Ct.App.), *cert. denied,* 108 N.M. 384, 772 P.2d 1307 (1989).[1] The movant need not cite the provision authorizing the motion; the substance of the motion, not its title, controls. *See Phelps Dodge Corp. v. Guerra,* 92 N.M. 47, 50, 582 P.2d 819, 822 (1978) ("[T]he nomenclature used is not significant."). In particular, it was not necessary that Hymans' motion cite Rule 1–060, although we observe that on March 2, 1993, approximately two weeks after Hymans filed his motion, he filed a motion to amend which stated that relief was being sought in part pursuant to " 'Paragraph B of Rule 1–060.' "

■ To begin the analysis of whether, and to what extent, Hymans' motion was governed by Rule 1–060, we summarize the portions of his motion relating to the computation of interest on the judgment. The judgment states that interest will "continu[e] to accrue in the amount of $56.08 per day from March 15, 1991, until paid or adjusted under the terms of the Note." Hymans appears to raise two challenges to the computation. His first contention is that the daily accrual rate of $56.08 is incorrect, because it is based on an annual interest rate of 10.35%, rather than the 10.25% rate set forth in the court's judgment. His second contention is that the Bank's computation did not include the required adjustment "under the terms of the Note."

■ Rule 1–060, which is substantially identical to Federal Rule of Civil Procedure 60 (Federal Rule 60), states as follows:

1. We note that a question may arise regarding the time for appeal when a post-judgment motion is timely under both Section 39–1–1 and Rule 1–060. In that event, the time for appeal from the judgment should be determined by treating the motion as one pursuant to Section 39–1–1. *See* SCRA 1986, 12–201(D) (Repl.1992) (time for appeal tolled by motion pursuant to Section 39–1–1). Once a notice of appeal is filed, the district

court cannot decide the motion while the case is on appeal unless the appellate court grants permission. *See Archuleta,* 108 N.M. at 548, 775 P.2d at 750. If no timely notice of appeal is filed, the motion should be treated as one under Rule 1–060. Of course, in that event the only appealable order will be the order resolving the motion under Rule 1–060; the original judgment cannot be the subject of the appeal.

**A. Clerical mistakes.** Clerical mistakes in judgments, orders or parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

**B. Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 1–059;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one-year after the judgment, order or proceeding was entered or taken. A motion under this paragraph does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audi-

ta querela and bills of review and bills in the nature of a bill of review, are abolished, and the proceeding for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Because Rule 1–060 follows the federal rule so closely, authority interpreting Federal Rule 60 can be persuasive in the absence of contrary New Mexico precedent. *See Fowler–Propst v. Dattilo,* 111 N.M. 573, 575, 807 P.2d 757, 759 (Ct.App.), *cert. denied,* 111 N.M. 678, 808 P.2d 963 (1991).

 Hymans' first contention—that he should not have been charged a daily accrual rate of $56.08—is based on a claim of computational error. The judgment recites a principal balance of $197,748.34 and an interest rate of 10.25%, so the correctness of the daily accrual rate is simply a matter of arithmetic. A computational error is a "clerical mistake" in the judgment that can be corrected pursuant to Rule 1–060(A). *See United States ex rel. Mississippi Rd. Supply Co. v. H. R. Morgan, Inc.,* 542 F.2d 262, 269 (5th Cir. 1976), *cert. denied,* 434 U.S. 828, 98 S.Ct. 106, 54 L.Ed.2d 86 (1977); *Trujillo v. Longhorn Mfg. Co.,* 694 F.2d 221, 225–26 (10th Cir. 1982); *Metromedia Co. v. Fugazy,* 753 F.Supp. 93, 99 (S.D.N.Y.1990), *aff'd,* 983 F.2d 350 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); 6A James Wm. Moore, *Moore's Federal Practice* § 60.06[3], at 60–43 (1995); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2854, at 149–51 (1973). *See generally United States v. Griffin,* 782 F.2d 1393, 1396–97 (7th Cir.1986). Because Rule 1–060(A) authorizes the component of Hymans' motion that sought to correct the daily accrual rate, this component of the motion was timely. The rule itself says that such a motion may be made "at any time."

 Hymans' second contention—that the Bank's computation of interest on the judgment failed to adjust the interest rate under the terms of the Note—also states the predicate for a motion under Rule 1–060(A). To prevail on this ground, Hymans does not seek relief from the judgment. Rather, he seeks to have the judgment properly interpreted. We explain why we hold that the

relief he seeks is authorized by Rule 1–060(A).

█ Rule 1–060(A) permits a court to correct errors "arising from oversight or omission." One type of oversight or omission is the failure to express the terms of a judgment unambiguously. A party thus may file a motion pursuant to Rule 1–060(A) to obtain clarification from the court regarding the terms of a judgment. *See Stovall v. Illinois Cent. Gulf R.R.*, 722 F.2d 190, 191 (5th Cir. 1984); *United States v. Mansion House Ctr. N. Redevelopment Co.*, 855 F.2d 524, 527 (8th Cir.), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 583 (1988); *Robi v. Five Platters*, 918 F.2d 1439, 1445 (9th Cir.1990); *In re Jee*, 799 F.2d 532, 534–35 (9th Cir. 1986), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987); *cf. Jackson v. Jackson*, 276 F.2d 501, 504 n. 4 (D.C.Cir.) (authorizing motion to clarify judgment pursuant to Federal Rule 60(b)(5) or (6)), *cert. denied*, 364 U.S. 849, 81 S.Ct. 94, 5 L.Ed.2d 73 (1960).

█ One could say that this component of Hymans' motion does not come under Rule 1–060(A) because he is not, strictly speaking, seeking a clarification of the judgment. He is contending that the judgment is unambiguous. Nevertheless, he sought relief because the Bank did not interpret the judgment the same way he did. So long as the parties disagree on the meaning of a judgment, either of them should be permitted to seek relief under Rule 1–060(A). There is sufficient "ambiguity" to justify judicial involvement whenever the parties dispute the meaning of the judgment, even if the movant contends (and the court concludes) that only one interpretation is reasonable. To construe Rule 1–060(A) otherwise would be to interpose a needless technical obstacle to expeditious resolution of disputes. Thus, Rule 1–060(A) encompasses motions seeking declaratory relief to resolve a dispute concerning the meaning of the language of a judgment. *See In re McAuley*, 66 B.R. 696, 701–02 (Bankr. 9th Cir.1986).

Once again, because this component of Hymans' motion is authorized by Rule 1–060(A), which permits motions to be made "at any time," this component of his motion was timely filed. Moreover, even if he needed to act within a reasonable time to seek this relief, that requirement was certainly met here. Nothing in the record indicates any reason for Hymans to have believed that he and the Bank differed in their interpretation of the judgment with respect to periodic adjustment of the interest rate until Hymans paid what the Bank demanded and then sought an itemization of the Bank's computation. Hymans filed his motion three months after he paid the Bank and only a few days after the Bank informed him of its conclusion regarding the amount owed.

We add one note of caution. Our determination that Hymans' two challenges to the interest charge come under Rule 1–060 does not mean that all of the components of his motion were appropriate under that rule. For example, in district court Hymans sought relief under the New Mexico Installment Loan Act, the National Bank Act, the New Mexico Residential Home Loan Act, and state usury and disclosure laws. But we have no need on this appeal to decide whether he could obtain such relief by means of a post-judgment motion pursuant to Rule 1–060.

**B. Timeliness of Appeal**

█ Having determined that Rule 1–060(A) authorizes the portions of Hymans' motion at issue on appeal, we readily conclude that his notice of appeal was timely. No statute or rule provides that motions under Rule 1–060 are deemed denied by operation of law if they are not decided within 30 days. *Cf.* § 39–1–1; SCRA 1986, 1–059(D) (Repl.1992) (motions for new trial not granted within 30 days from filing are automatically denied). Consequently, the time for filing this appeal commenced when the district court filed its order denying Hymans' motion. The notice of appeal was filed 30 days after the district court's order and was therefore timely. *See* SCRA 12–201(A).

**III. INTEREST RATE ON JUDGMENT**

We now address the merits of Hymans' contentions regarding the interest due on the judgment. One contention can be treated

summarily. The judgment should be corrected to provide a daily accrual rate of $55.53 rather than $56.08.

■ The more intricate contention is the one regarding adjustments to the interest rate. The judgment states:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

A. That Bank be awarded judgment against Hymans and Lesnett, jointly and severally, on the Note in the amount of $197,748.34, plus interest in the amount of $16,016.37 through March 15, 1991, *plus interest continuing to accrue in the amount of $56.08 per day from March 15, 1991, until paid or adjusted under the terms of the Note,* plus late charges in the amount of $798.39, plus attorneys' fees incurred through April 30, 1991, in the amount of $2,852.96, which amount includes New Mexico gross receipts tax, plus costs of suit in the amount of $311.96. The Note is merged into this Judgment, and upon entry hereof shall be marked canceled and returned to Hymans and Lesnett. (Emphasis added.)

Hymans contends that the phrase "adjusted under the terms of the Note" incorporates the language of the Note that calls for annual adjustment of the interest rate. The Note contains the following paragraphs:

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 10.2500%. The interest rate I will pay will change in accordance with Section 4 of this Note.

*The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.*

. . . .

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

*The interest rate I will pay may change on the first day of JUNE, 1991, and on that day every 12th month thereafter.* Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND ONE/HALF percentage points (3.5000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.2500% or less than 8.2500%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 16.2500%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice. (Emphasis added.)

Hymans argues that the judgment, by incorporating the adjustment provisions of the Note, bore a variable interest rate. We agree.

■ The Bank suggests two reasons why Hymans' interpretation of the judgment is foreclosed. First, the Bank contends that the New Mexico statute governing the interest rate on judgments, NMSA 1978, § 56–8–4 (Repl.1986), fixes the interest rate at the time of the judgment and does not permit a post-judgment variable interest rate. We note that the New Mexico statute is not explicit in this regard. *Compare* Section 56–8–4(A) (for judgment rendered on a written instrument "interest shall be computed at the rate specified in the instrument") *with* Or. Rev.Stat. § 82.010(3) (1988) (judgment on contract "shall bear interest at the same rate provided in the contract as of the date of entry of the judgment or decree"). *See also Student Loan Mktg. Ass'n v. Raja,* 878 S.W.2d 830 (Mo.Ct.App.1994) (judgment provided for periodic adjustment of interest rate). But in any event it is unnecessary for us to resolve the issue. Because the judgment was not appealed by either party, it is too late to correct any legal error in setting the judgment interest rate. *See Deerman v. Board of County Comm'rs,* 116 N.M. 501, 505–06, 864 P.2d 317, 321–22 (Ct.App.) (legal error in judgment cannot be corrected pursuant to Rule 1–060(B) unless motion is filed before expiration of time for appeal), *certs. denied,* 116 N.M. 364, 862 P.2d 1223 (1993).

Therefore, the issue before us is not what interest rate was required by the statute, but what interest rate is provided by the judgment.

■ Second, the Bank contends that the provisions in the Note cannot be considered for purposes of computing the interest rate on the judgment because the Note was merged into the judgment. We disagree. Although the merger of the Note into the judgment prevents the Bank from pursuing any future action on the Note, the merger does not mean that the Note is expunged from the court's memory and the court may never examine its provisions. If, as Hymans contends, the judgment states that the interest rate on the judgment will be computed in the same manner as the interest rate would have been computed on the Note, then the merger of the Note into the Judgment cannot override such a reference to the Note. In other words, the merger of the Note into the judgment does not prevent the district court from incorporating language from the Note by reference into the judgment. We know of no reason to require the district court to write in the judgment itself all of the provisions of the Note regarding adjustment of the interest rate.

Thus, we turn to the specific language of the judgment. The judgment provides that interest on the judgment will "accrue in the amount of $56.08 per day from March 15, 1991, until paid or adjusted under the terms of the Note." Hymans contends that "adjusted under the terms of the Note" means that the interest rate shall be adjusted annually on the same basis as provided in the Note. We agree because we can discern no other reasonable meaning for the quoted language. The Bank does not suggest any other meaning. Unless the interest rate on the judgment changes, there is only one reason why the daily accrual of interest would be changed: If a judgment debtor makes a payment on the judgment which is large enough to reduce the principal amount owed on the judgment, then the daily accrual of interest would be reduced below $56.08 per day because the daily accrual of interest is simply the product of the annual interest rate and the principal amount owed, divided by the

694

number of days in the year. An adjustment of that sort in the daily accrual of interest could not reasonably be characterized, however, as an adjustment "under the terms of the Note." The terms of the Note have nothing to do with a reduction in the daily accrual of interest that results from a payment on the judgment by the judgment debtor. We note that the foreclosure decree provides that the amount owed on a junior mortgage to Sunwest Bank of Santa Fe bears "interest in the amount of $9.83 per day from April 30, 1991, until paid." Nothing is said about reducing the daily accrual of interest as a result of payment of principal. This language confirms our view that reduction in daily accrual of interest resulting from payment on the judgment debt is implicit in the judgment and that no explicit language in the judgment addresses that possibility. We conclude that the judgment required the interest rate on the judgment to be recomputed annually in accordance with the Note.

## IV. CONCLUSION

We reverse the order denying Hymans' motion and remand to the district court to recompute the amount owed and to award Hymans restitution for any overpayment. An order accompanying this opinion provides further guidance to the district court. We deny Hymans' request for sanctions against the Bank pursuant to SCRA 1986, 12–403(B)(4) (Cum.Supp.1994). No costs are awarded.

**IT IS SO ORDERED.**

DONNELLY and PICKARD, JJ., concur.