1998-NMCA-100

961 P.2d 794

**Louis Paul ROCHESTER, Petitioner–Appellant,**

v.

**June Elizabeth ROCHESTER, Respondent–Appellee.**

No. 18437.

Court of Appeals of New Mexico.

June 11, 1998.

Lloyd O. Bates, Jr., Bates Law Firm, Las Cruces, for Appellant.

Jon A. Feder, Atkinson & Kelsey, P.A., Albuquerque, for Appellee.

## OPINION

HARTZ, Chief Judge.

■ {1} Lump-sum child support to cover future child support obligations is unusual, if not rare, in New Mexico. This appeal illustrates why that should remain the case. We affirm the district court's ruling that Louis Paul Rochester (Father) is not entitled to any credit from June Elizabeth Rochester (Mother) for prepaid lump-sum child support despite the transfer of custody of their child (Child) from Mother to Father.

## BACKGROUND

{2} Father and Mother were divorced in Texas in 1987. They had one child, a girl born on October 1, 1986. The divorce decree named Mother the managing conservator of the Child and Father the possessory conservator, absent a contrary agreement of the parents. Father was to enjoy visitation on alternate weekends and holidays.

{3} The decree states that the parents reached an agreement regarding child support and the division of their marital estate. In lieu of periodic child support the decree provided that Father would execute a promissory note to Mother in the amount of $2.5 million, of which almost half had been paid at the time of the decree. The note was payable on demand or, in the absence of a demand, in monthly installments of $50,000.

{4} In 1994 Mother filed suit in Dona Ana County District Court (the 1994 Lawsuit), claiming that Father had not fully paid the $2.5 million promissory note. She also sought indemnification for taxes she had paid arising from their 1985 income tax return. Father counterclaimed for a declaratory judgment that he had paid the note in full in January 1988. After a trial in June 1995, the district court entered judgment on October 20, 1995 that Father had paid the promissory note in full by January 1988 but that Mother was entitled to be indemnified for her tax payment.

{5} In the meantime, Father had initiated proceedings in Dona Ana County District Court relating to custody of the Child (the Custody Lawsuit). On August 2, 1995 the district court entered a temporary order granting Father sole legal custody of the Child and allowing Mother visitation every Thursday night, alternate weekends and holidays, and various periods during summer vacation. The district court made the temporary order permanent in a final order dated November 14, 1995.

{6} The present appeal arises out of a motion filed by Father in the Custody Lawsuit on March 20, 1996. The motion sought credit for past and future child support that had been paid in advance. The gist of Father's claim was that the $2.5 million in lump-sum child support was the equivalent of $12,195 per month for the seventeen years and one month of the Child's minority after dissolution of the marriage. He sought a credit of more than $100,000 from Mother for the amount of child support that would cover the period during which he had custody of the Child preceding the filing of his motion, and a credit of $12,195 per month for the future. He contended that the credit would offset the approximately $113,000 that he was required to indemnify Mother for her tax payment (as required by the judgment in the 1994 Lawsuit).

{7} Mother responded on the merits. She also moved to dismiss Father's motion on two grounds. The first ground was that the district court had no jurisdiction to modify retroactively an accrued child support obligation. The second was that Father's motion was barred by issue preclusion arising from the judgment in the 1994 Lawsuit; she contended that the relief sought by Father should have been requested in that litigation as a defense to enforcement of the Texas decree. (The motion to dismiss also contended that Father had failed to join an indispensable party, an issue we need not elaborate on.)

{8} Prior to the hearing on the motions of the parties, a discovery dispute arose regarding Mother's request for information on Father's financial condition. Mother abandoned her discovery request, however, when Father represented that he was not seeking

a monetary judgment or child support from Mother.

{9}   At the hearing on the motions neither party offered any testimony. They relied on the terms of the Texas divorce decree, the decision in the 1994 Lawsuit, and the prior custody determination in this case. The district court granted Mother's motion to dismiss Father's motion for credit. Its order of March 26, 1997 stated in pertinent part:

1.   [Father] is not seeking a modification of child support due to changed circumstances.

2.   Any defense equitable or otherwise to the judgment in [the 1994 Lawsuit] should have been raised in those proceedings.

3.   Res judicata bars [Father] from seeking the equitable relief sought from the Court in this matter.

4.   [Mother's] Motion to Dismiss is well taken and should be granted.

5.   [Father's] Motion for credit should be denied.

The court then entered an amended order on April 16, 1997, stating:

1.   That the Motion to Set Aside the order entered March 26, 1997, is well taken and should be granted.

2.   That the Motion to Dismiss should be granted.

3.   That [Father] is not seeking a modification of child support due to changed circumstances.

4.   That [Father's] motion for credit should be denied.

The difference in the orders is that the amended order does not rely on issue or claim preclusion. The court apparently decided not to rely on those grounds because at the time of the trial of the 1994 Lawsuit, Father had not been awarded custody of the Child, so he would have had no ground for claiming a credit. On appeal Mother does not rely on issue or claim preclusion.

*DISCUSSION*

█   {10}   Perhaps the greatest challenge in this case is determining how best to characterize Father's claim. Although the district court's order recites that Father "is not seeking a modification of child support due to changed circumstances," this is correct only in a limited sense. Father is not seeking the typical modification of child support—a reduction in future required periodic payments by him or the initiation of periodic payments to him by Mother. But he *is* trying to change the effect of a child support order.

{11}   Father claims a credit for what he considers to be an excess prepayment of child support. The essence of his argument is that a changed circumstance—the transfer of custody of the Child to Father—justifies relief from the Texas decree, which assumed that Mother would have custody. As a result of that changed circumstance, Father seeks reimbursement for a portion of the lump-sum payment. The reimbursement would not be in cash but in the form of an offset to sums that Father would otherwise owe Mother, such as the judgment for unpaid taxes. As Father states in his brief in chief:

[E]ven if [Father] cannot get back the approximate $1,600,000.00 in prepaid child support not owed, he should be allowed to offset that obligation against the claims of [Mother]. [Mother] paid a community tax debt which was assigned to [Father] in the divorce. She is seeking to recover that approximately $120,000.00 from [Father]. It would be inequitable to allow [Mother] to continue a claim for money from [Father] for taxes and at the same time evade or not be obligated to refund or pay back approximately $1,600,000.00 of prepaid support.

The foundation of Father's claim appears in the first sentence of the above-quoted passage. He refers to prepaid child support that was "not owed." That assertion is contrary to the Texas divorce decree, which unequivocally states that the total $2.5 million in child support is owed. Thus, Father's claim for credit requires modification of the Texas decree. In what circumstances is such modification permissible?

{12}   Often courts maintain continuing jurisdiction over orders in divorce cases. Sometimes that continuing jurisdiction is set forth explicitly in the court's order or decree.

Here, however, the Texas decree is absolute in form. It requires Father to pay child support in accordance with a demand promissory note. The decree contains no provision permitting modification of the award in the event of any contingency, such as a change in custody of the Child, a change in the financial condition of either parent, or the Child's disability or even death.

{13} To be sure, even when the court's order in a divorce case does not explicitly provide for continuing jurisdiction, certain types of continuing jurisdiction are provided as a matter of law. For example, district courts in New Mexico have statutory authority to make prospective modifications of child support awards arising from changed circumstances, regardless of whether the original award of child support expressly reserves such authority. *See* NMSA 1978, § 40-4-7(G) (1997); § 40-4-11.4 (1991); *Spingola v. Spingola*, 91 N.M. 737, 741, 580 P.2d 958, 962 (1978) (stipulated judgment to make child support or alimony nonmodifiable is against public policy); *cf. Deeds v. Deeds*, 115 N.M. 192, 848 P.2d 1119 (Ct.App.1993) (court can extend alimony beyond date of termination set in prior order). Consequently, now that Father has custody of the Child, perhaps Mother should begin making child support payments to Father. Both parties assume that the New Mexico district court would have authority to make such an award, despite the Texas lump-sum decree. We need not decide whether we agree with the parties on that point, however, because in district court Father expressly disavowed any claim for such prospective modification of child support. (As a result, Mother abandoned her efforts to obtain discovery regarding Father's financial condition.)

{14} What Father seeks here is not a change in an award of future child support, but relief from a vested, accrued award—the $2.5 million lump-sum award in the Texas decree. Courts in divorce cases have no special authority, no continuing jurisdiction, to set aside or grant other relief with respect to accrued obligations. *See Britton v. Britton*, 100 N.M. 424, 428, 671 P.2d 1135, 1139 (1983) (accrued child support arrearages cannot be modified); *Leeder v. Leeder*, 118 N.M. 603, 610, 884 P.2d 494, 501 (Ct.App.1994) (same); *Michaluk v. Burke*, 105 N.M. 670, 675-76, 735 P.2d 1176, 1181-82 (Ct.App.1987) (court lacks authority to make retroactive modification of accrued and vested lump-sum alimony). Apparently, Texas courts also have no such authority. *See Willis v.. Willis*, 826 S.W.2d 700, 702 (Tex.App.1992). (We note that federal law denies certain federal funding to states that permit retroactive modification of child support orders. *See* 42 U.S.C. § 666(a)(9)(C) (1984, as amended through 1997); *Dean v. Dean*, 4 Neb.App. 914, 552 N.W.2d 310, 314 (1996) (discussing the federal statute).)

{15} Thus, if Father is entitled to any relief from the Texas lump-sum decree, it must be pursuant to the general rule governing relief from judgments—Rule 1-060 NMRA 1998.[1] *Cf. Barnes v. Shoemaker*, 117 N.M. 59, 868 P.2d 1284 (Ct.App.1993) (husband seeks modification of property division pursuant to Rule 1-060(B)(5)). Although Father has not cited Rule 1-060 in support of his claims for relief, we have not required specific invocation of the rule when the claim comes within the rule. *See Washington v. AT & SF Ry.*, 114 N.M. 56, 60-61, 834 P.2d 433, 437-38 (Ct.App.1992). Rule 1-060 states:

**Relief from judgment or order.**

1. Because Mother sued on the Texas decree in the 1994 Lawsuit, we assume that the decree was domesticated in New Mexico. Even after domestication, however, the Full Faith and Credit Clause of the United States Constitution requires that a New Mexico court ordinarily grant the Texas decree at least as much res judicata effect as a Texas court would give it. *See Conglis v. Radcliffe*, 119 N.M. 287, 289, 889 P.2d 1209, 1211 (1995); *Corliss v. Corliss*, 89 N.M. 235, 236-38, 549 P.2d 1070, 1071-73 (1976) (New Mexico court had no power to modify arrearages

from Missouri support judgment because Missouri court would not have that power). But in light of the fact that we find no ground for modification under New Mexico law, we need not determine whether the law of Texas is more restrictive or less restrictive. *Cf.* Restatement (Second) Conflicts of Law § 115 cmt. b (1971) (court in state where enforcement of judgment is sought may stay proceedings and require party seeking relief from judgment to proceed in state of rendition).

A. **Clerical Mistakes.** Clerical mistakes in judgments, orders or parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with the leave of the appellate court.

B. **Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 1–059;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one-year after the judgment, order or proceeding was entered or taken. A motion under this paragraph does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querla and bills of review and bills in the nature of a bill of review, are abolished, and the proceeding for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

■ {16} One possible source of relief might be Rule 1–060(B)(5), which allows modification of a judgment because of changed circumstances. But such relief is available only from the "prospective application" of the judgment. In our view, once a final order to pay a sum certain has been satisfied, the judgment no longer has "prospective application."

{17} Our view finds support in federal court decisions interpreting Federal Rule of Civil Procedure 60(b)(5). Because the federal rule is essentially identical to the New Mexico rule, federal case law is persuasive in interpreting our rule. *See Century Bank v. Hymans,* 120 N.M. 684, 690, 905 P.2d 722, 728 (Ct.App.1995).

■ {18} In *Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988), the court noted that "[v]irtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect[.]" But not all such effects, the court said, are contemplated by Rule 60(b)(5). Rather, "the standard [applied] in determining whether a judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is executory or involves the supervision of changing conduct or conditions." *Id.* at 1139 (internal quotation marks omitted). *Accord Maraziti v. Thorpe,* 52 F.3d 252, 254 (9th Cir.1995); *see Schwartz v. United States,* 976 F.2d 213, 218 (4th Cir.1992); *Barnes,* 117 N.M. at 65–67, 868 P.2d at 1290–92 (denying modification of future periodic payments arising from property settlement); Restatement (Second) of Judgments § 73 cmt. b (1980). *But cf. Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (indicating a less demanding standard for application of Rule 60(b)(5) than that stated in *Barnes* ). We adopt the view set forth in *Twelve John Does.* Because the lump-sum award had been paid in full, it was not executory and no further judicial supervision was necessary to assure its payment. Hence, Father was not entitled to relief pur-

suant to Rule 1–060(B)(5). It is irrelevant whether the Texas court may have had continuing jurisdiction over other issues arising from the divorce, even including further future awards of child support. The lump-sum award itself required no "supervision of changing conduct or conditions."

{19} A second possible source of relief might appear to be Rule 1–060(B)(2), which permits relief from a final judgment because of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." The newly discovered evidence presumably would be the change in custody of the Child. But Father cannot obtain relief via that route. First, relief pursuant to Rule 1–060(B)(2) is available only if the motion for relief is made within one year of the judgment from which relief is sought. *See* Rule 1–060(B). Moreover, relief pursuant to that provision is generally restricted to evidence that was in existence at the time of the trial. *See Fowler–Propst v. Dattilo,* 111 N.M. 573, 575, 807 P.2d 757, 759 (Ct.App.1991). In particular, relief is not available simply because a prediction of future events turned out to be wrong. *See id.* at 574, 807 P.2d at 758 (property was sold three months after trial at much higher price than the value assigned to the property by the prevailing party's witnesses). Father's gaining custody of the Child is not newly discovered evidence just because the decree did not make allowances for that possibility.

{20} The sole remaining possibility would be relief pursuant to the residual provision of Rule 1–060(B). Paragraph (6) permits the court to grant relief for "any other reason justifying relief from the operation of the judgment." But the circumstances justifying relief under paragraph (6) must be "exceptional," *Resolution Trust Corp. v. Ferri,* 120 N.M. 320, 324, 901 P.2d 738, 742 (1995) (internal quotation marks omitted), and paragraph (6) "is limited in scope to reasons not addressed in the five preceding [paragraphs]." *Fowler–Propst,* 111 N.M. at 574, 807 P.2d at 758.

{21} Such relief is not appropriate here. The lump-sum child support provided by the Texas decree was the result of a settlement between the parties. Both were represented by counsel. Their attorneys could certainly have conceived of a host of contingencies that might suggest a change in child support—from a change in the financial circumstances of the parents, to a change in custody of the Child, to a change in the needs of the Child (from death, disability, or otherwise)—yet none were mentioned in the decree, nor did the court retain continuing jurisdiction to make adjustments to the lump sum. Nothing in the record before us indicates why the parties chose this arrangement for child support, but we note that the parties also reached a settlement with respect to the division of property, and we cannot close our eyes to the possibility that tax consequences may have played a role in determining how to characterize payments from Father to Mother.

{22} Moreover, there is evidence in the record that Mother may not have obtained full benefit from the payments by Father. The district court's findings in the 1994 Lawsuit, of which the district court in this case took judicial notice, stated that Father made the final payment to Mother on the promissory note by assigning all his interest in his investment company, PRICO. Yet, he continued to receive and spend funds derived from PRICO, and when Mother eventually sold what was apparently PRICO's chief asset, the sale price was well below the value attributed to PRICO at the time of the assignment to Mother.

{23} In short, the reason presented by Father for modifying the decree should have been anticipated by Father at the time he agreed to the lump-sum award, and the record does not establish that the award was inequitable even in light of the change in custody of the Child. Father has fallen far short of proving the exceptional circumstances that could justify modification of the lump-sum award in the Texas decree.

*CONCLUSION*

{24} We affirm the district court's order of dismissal.

{25} **IT IS SO ORDERED.**

ALARID and APODACA, JJ., concur.